## No. 10,729.

### HERMAN HERLISCH VS. THE LOUISVILLE, NEW ORLEANS & TEXAS RAILROAD COMPANY.

On approaching a street crossing of a railway track in a city, it is the duty of a traveler to exercise his senses of sight and hearing and look and listen for an approaching train. His failure so to do is negligence which, in case of collision, will prevent his recovery of damages for injuries sustained.

APPEAL from the Civil District Court for the Parish of Orleans. Voorhies, J.

*Henry L. Lazarus* and *Lionel Adams* for Plaintiff and Appellee:

When the usual warning is withheld, the wayfarer has a right to assume that the crossing is safe, and that the company is not violating the law and endanger-ing human life by running an engine without signals.

The citizen on the public highway is bound only to the exercise of ordinary care; and when he is injured by the negligence of a railroad company, it is no answer to his claim for redress that notwithstanding the omission of the signals he might by greater vigilance have discovered the approach of the train; if he had foreseen a violation of the statute instead of relying upon its observance.

The traveler is not bound to stop on the highway, or to look up and down an intersecting railway track before crossing, when there are no signals of an approaching engine. Ernst vs. Hudson Railway, 8 Tiffany, pp. 9 and 10 (New York Court of Appeals).

Where a railroad company permits or acquiesces in the public using its roadbeds for travel, the parties using the roadway are licensees and not trespassers. Authorities in brief.

*Farrar, Jonas & Kruttschnitt* for Defendant and Appellant:

1. The use of a railroad track as a thoroughfare is negligence *per se*. Such use is a trespass, and no duty lies upon the railroad company except that of not injuring such trespasser wantonly. 28 Ind. 287; 47 Ind. 43; 13 Minn. 30; 10 Ire. (N. C.) 402; 44 Pa. St. 375; 10 Ga. 207; 71 Ill. 500; 19 A. and E. R. R. Cases, 83; Ibid. 108.

2. The mere fact that people have frequently trespassed upon the railroad track, and that the company may not have resorted to any means to stop the same, will not imply consent to such use of the track; nor will it create any right in such user. 10 Ga. 207; 79 Pa. 33; 13 Ind. 325; 47 Ind. 43; 97 Mass. 276; 71 Ill. 500; 83 Ill. 510; 100 Mass. 508; 8 Am. and E. R. R. Cases, 726; 15 Am. and E. R. R. Cases, 439.

3. If one walks on a railroad track as a thoroughfare and is injured while on a street crossing, he is guilty of contributory negligence. 19 Am. and E. R. R. Cases, 342.

4. The failure of a person at the intersection of a railroad track and a highway to employ his senses, when such employment would insure safety, is, as a matter of law, contributory negligence. 44 Am. and E. R. R. Cases, 568.

5. The duty to stop, look and listen, when approaching a crossing, is imperative, and no court has ever relaxed it.

6. Failure to post a flagman or give signal at crossing does not exempt party approaching a crossing from obligation to stop, look and listen. 95 U. S. 697; 64 Mo. 480; 41 N. Y. 296; 120 Mass. 257; 47 Ill. 514; 22 Ill. 264; 2 Am. and E. R. R. Cases, 172; Ibid 220.

7. The burden of proof being on the plaintiff to show want of contributory negligence, he can not recover for injuries at a crossing without some proof or statement that he used such reasonable precautions as the dangerous position he was in required of him.

The opinion of the court was delivered by

WATKINS, J. This is an action in damages for serious permanent injuries, sustained by the plaintiff, by reason of his having been struck by one of defendant's locomotives, through the gross and culpable fault and neglect of its servants and employés.

The occurrence is alleged to have happened on the evening of the 20th of August, 1889, at the intersection of Clara and Poydras streets, in the city of New Orleans, as the plaintiff was crossing the former, the said locomotive moving westward from the company's depot at the time.

Petitioner charges that from the injuries inflicted he suffered great

pain in mind and body, and has, thereby, been rendered unable to perform *any* labor, or earn the means necessary to support himself and family since the occurrence.

He further charges that the injuries he sustained were the direct result of the gross and culpable negligence of defendant's employés in failing to observe the requirements of law, to properly flag the crossing, to ring the bell, or to blow the whistle, on the approach of the locomotive; also in failing to have a gate, or adjustable bar, or other device to warn pedestrians and *prevent* their crossing the company's track when same is approaching.

He further specially charges that " the engineer was grossly and wilfully negligent in driving said engine * * * and was reckless in handling same, in utter disregard of the obligations imposed upon him, both in humanity and law."

The amount demanded of the defendant as compensation for injuries thus received by the plaintiff, is $30,000.

Defendant's answer is that the plaintiff was injured by and through his own gross fault and negligence, and not by or through the fault and negligence of its servants or employés, plaintiff being a *trespasser* on its track at the time of the accident.

The case was submitted to and tried by a jury, who rendered a verdict in favor of the plaintiff for $5000, but upon rule taken for a new trial, the court awarded the defendant a new trial, and thereupon the jury found for the plaintiff a verdict of $10,000. Upon this verdict, defendant failing to obtain a new trial, a judgment was accordingly entered up and it has appealed.

Our only province, therefore, is to determine between the parties the question of negligence *vel non*, there seeming to be from the general purport of the answer but little doubt of the plaintiff having suffered *injury* and none of the happening of the accident.

And, in the determination of the question of the defendant's negligence, as well as that of the plaintiff's contributory negligence *vel non*, the principal and much mooted fact is that of the *precise* location of the plaintiff when he was overtaken by the defendant's train, the plaintiff's contention being that he was *immediately on the crossing*, or intersection of Clara and Poydras streets; while that of the defendant is that *he was in its yard*, which is situated between Magnolia and Clara streets, between the tracks numbered four and five,

near the north side of the yard, and *a distance of about sixty-five feet from the crossing of Clara and Poydras streets.*

On this contention of the defendant, it is claimed that the plaintiff was a mere trespasser, and, therefore, at fault primarily, and guilty of negligence *per se*, because the whole of the property situated between North and South Poydras streets, adjacent to Clara street, is its *private property*, acquired by purchase and expropriation—it having been at one time filled with buildings, since demolished and replaced and overlaid with its tracks and their switch connections, uniting them with its various yards and squares of ground and depots.

To these are superadded others of minor importance which need no particular mention now.

From the record we glean the following salient facts, viz.:

On the morning of Agust 20, 1889, the plaintiff started from his place of business on Front street, near the corner of Lafayette street, between Prieur and Johnson streets, at the intersection of Poydras and Howard streets.

When he had arrived at this place he found the banquettes were flooded with water from a recent heavy shower of rain, and the waiting rooms of the depot being closed, he passed on the outside and under the shed, which extends west from the depot to the intersection of Freret and Poydras streets, and continued his walk down the north side of the neutral ground between North and South Poydras streets, and had either reached or neared the crossing, or intersection of Clara and Poydras streets—a distance of three blocks from the end of the shed.

At this point the defendant had in use, on the space intervening between North and South Poydras streets—which is its *private* property—four parallel tracks, numbered, respectively, one, two, three, and four; and, also, another track which extends transversely across the other four, whereby switch connections are formed by the various engines and trains of the company with the several depot yards adjacent to the depot.

While the plaintiff was thus proceeding, he being crippled of one foot slightly, and the night being dark, a switch engine of the defendant shifted its position from the straight track No. 4 to the diagonal cut-off track, and struck him on the left side of his back,

inflicting a severe blow at the base of the spine and upon his hip, whereby he sustained serious injuries.

The reason assigned by the plaintiff for his being in that situation was that he was at the time a sufferer from a sore heel, as above stated, and sought to escape the water on the flooded banquettes by resorting to the dry grounds of defendant's location and property, over which he had just walked to the intersection of Clara street when he was thus overtaken.

To this statement both parties substautially agree.

On the disputed question, i. e., the *exact* point on the defendant's track at which Herlisch had arrived when he was overtaken by its engine and violently knocked down, there is a very great disparity of statement on the part of the witnesses *pro et con*, those of the plaintiff emphatically asserting that he was manifestly overtaken *on* the crossing, while those of the defendant are just as emphatic in asserting that the accident happened at a distance of ninety (90) feet from the crossing on the river side of Clara street.

As a witness, plaintiff states that while he was in the act of crossing Clara street, at the intersection with Poydras street, endeavoring to pass *obliquely* from the north to the south side of Poydras in order to reach a dry banquette on that side, and, having just reached track No. 3 on the south side, he was struck by the locomotive and thrown about ten (10) feet into the south side roadway. By the blow received, and the accompanyng fall, he was stunned and severely injured, and rendered unable to rise and walk, and he there remained until assistance arrived. That afterward a man came running from the engine, which had passed beyond him about twenty-five (25) feet, to where he lay; and this man was followed by another, whom he took to be the engineer, who approached him and cursed him, and said he was drunk and went off again. Another man, who was standing at a corner grocery opposite, came across and assisted the man first named to carry him over there, and presently, an ambulance was summoned and he was carried to his residence.

A careful examination of all of the testimony has fully satisfied us of the correctness of his statement in the main, and it further satisfies us that the defendant's employes were neglectful of their duties under the general principles of law as well as under the ordinances of the municipality, in reference to keeping a flagman at the street

Herlisch vs. Railroad Co.

crossing, the exhibition of a red light, etc. And the evidence ren-
ders it exceedingly doubtful that a bell was rung, or whistle sounded.

Taken all in all, however, the evidence fairly makes out a case of
negligence on the part of the company. They were evidently un-
mindful of the rights of pedestrians, who had equal rights to use
this crossing, as they had to pass their trains over it.

But while this is perfectly true, we are quite as thoroughly satis-
fied that the plaintiff was himself guilty of negligence, which directly
caused or contributed to the accident by which his injuries were in-
flicted. He fails to state any precautions taken by himself to avoid
a collision with the defendant's locomotive, or that he either looked
or listened for its approach, although the proof is clear and uncon-
tradicted that the locomotive headlight was burning, and that
although the night was dark and rainy, there was an electric light at
the street corner on either side. There is some statement made
to the effect that there were adjacent to the crossing some box-cars
which *may* have impeded the plaintiff's view, but in his testimony no
reference is made to such an impediment.

The rule is a fair and reasonable one which requires of travelers,
who resort to thoroughfares of a city over which railroad companies
possess a right of way, to exercise the greatest possible care to
avoid collisions with their trains.

This we take to be a settled rule of law, notwithstanding a like
obligation is imposed on railroad companies.

In Artz vs. Railroad Co., 34 Iowa, 160, which is a leading case and
cited by many text writers as standard authority, the court ex-
pressed this view, viz.:

" Ordinarily, the fact that the train neglected to make statutory
and customary warnings does not relieve a person approaching an
open crossing from the duty of lookout on approaching the road.
When a person knowingly about to cross a railroad track may have
an unobstructed view of the railroad, so as to know of the approach
of a train, a sufficient time to clearly avoid any injury from it, he
can not, *as matter of law* recover, although the railroad company
may have also been negligent, or have neglected to perform a statu-
tory requirement."

See Wharton's Law of Negligence, Sec. 384.

Another author, in treating of the same subject, says:

"If a traveler" at a railway crossing of a public thoroughfare,

"by looking could have seen an approaching train in time to escape,. it will be presumed, in case he is injured by the collision, either that he did not look, or if he did look, that he did not heed what he saw. Such conduct is negligence *per se*." Beach on Contributory Negligence, Sec. 63.

That author further says:

"Statutes and municipal ordinances, in every jurisdiction, prescribe specifically the duty of railway corporations in respect to railway crossings, but no failure on the part of the railroad company to do its duty will excuse any one from using the sense of sight and hearing upon approaching a railway crossing; and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty." Id., Sec. 64, p. 195.

But Mr. Wharton says: "If there are obstructions at the (street) crossing such as to make it impossible for a person approaching to see the train, and impossible, or very difficult, to hear it, in such and similar cases it would be the clear duty of the railroad company to ring the bell or to sound the whistle, so as to warn persons of the approach of the train; and an omission to do so, even in the absence of any statute requiring it, would be negligence, *if so found by the jury*, rendering the company liable for any injury resulting therefrom." Id., Sec. 804, 386; Beach on Con. Neg., Sec. 386, 203; Artz vs. Railroad Co., 34 Iowa, 160.

But while the existence of obstacles or obstructions of any kind, at or near a railway crossing of a public street, under the rule thus formulated, impose additional precautions as to prudence and care on the part of railroad companies, yet Mr. Beach states that "at an obstructed crossing it is the duty of the traveler to exercise a greater degree of care and caution than is incumbent upon him usually." Beach Con. Neg., Sec. 65, p. 203.

Another author summarizes the duties of railroad companies and travelers respectively, in respect to public crossings at the intersection of public streets of a city and a railway track, thus:

"At the place of intersection there are *concurrent* rights. Neither the traveler on the common highway nor the railroad company has an *exclusive* right of passage. Even on a common road travelers must look out for the approach of other vehicles passing. And this.

is the more necessary at a railroad crossing, because movement on such a road is more speedy and because the consequences of such a collision are usually so disastrous. Precaution—looking out for danger—is, therefore, a duty." 1 Thompson on Negligence, p. 403. See also Railroad Company vs. Hellman, 30 Pa. St. 464.

The instant case is quite similar in many respects to the case of White vs. Railroad Co., 42 An. 990, wherein the plaintiff sought to recover of the company for injuries inflicted upon her by coming in collision with one of their trains while crossing a public thoroughfare of the city of Shreveport, under circumstances far more aggravated than those apparently surrounding Herlisch. In that case we said:

" She was unquestionably bound to look and listen, and to exercise care and caution, to avoid the possible danger suggested by the very fact of the crossing." Vide Brown vs. Railroad Co., 42 An. 350; also:

Plaintiff's counsel claim that the case of Curley vs. Railroad Co., 40 An. 810, is strictly applicable and should govern our decision. The facts of that case were quite different; for it appears that the train had just passed the street crossing going west, and the court say:

" He had, we think, reason to believe that the track was clear, that the train had passed on, and that he could cross with safety; and he had no knowledge of its *again returning on the main* track. There were no lights to give warning of the approach of the train. The engine was not in front of the train." Id. pp. 815, 816.

That case is exceptional, and is grounded on the facts recited, which take it out of the operation of the rule of law announced by the authors quoted from.

Our conclusion is that plaintiff was primarily guilty of negligence and is not entitled to recover, and that the judgment must be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and it is now ordered and decreed that the demands of the plaintiff be rejected at his cost in both courts.

Rehearing refused.