(38 South. 83.)

No. 15,350.

RILEY v. SHREVEPORT TRACTION CO.*

(Jan. 30, 1905.)

STREET RAILROADS—COLLISION WITH WAGON—
EVIDENCE—NEGLIGENCE.

1. Those who drive wagons in the streets and seek to cross from one side of the street to the other, should be reasonably careful, and not cross too near, for safety's sake, a fast approaching car.

2. The plaintiff, driver of the wagon, saw the car at a considerable distance away. Instead of driving across after leaving an intersecting street, he turned to the left of the street on which he was, drove a few feet, and then turned to the right, and sought to cross the street diagonally in the direction the electric car was coming. The result was a head-on collision.

3. The driver's testimony in regard to the asserted impediments of the track which prevented him from hastily crossing is not sustained by the allegations of his petition nor by the weight of the testimony.

4. The fact that a car runs quite a distance after an accident is not conclusive that there was negligence on the part of the motorman, if the weight of the testimony shows that the car was disabled in the collision, and thereby became uncontrollable, and for that reason slipped many feet on the wet rails.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

---

*Rehearing denied February 27, 1905.

Action by S. S. Riley against the Shreveport Traction Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Murff & Webb, for appellant. Wise, Randolph & Rendall, for appellee.

BREAUX, C. J. Plaintiff alleges that the defendant is indebted to him in the sum of $12,200 damages.

The case was tried before a jury. Their verdict was against him. He moved for a new trial, which was refused. He prosecutes this appeal.

In December, 1903, at about 7 o'clock, after dark, plaintiff, the driver of a one-horse delivery wagon for A. Dabrantes, a merchant of Shreveport, was returning to the business place of his employer, and on his way was driving out of Division street of that city into Texas avenue, one of the main thoroughfares of the city.

Immediately after having turned in an easterly direction on Texas avenue, he determined to cross to the north side, it being the right in the direction he was going. He attempted to cross the street in a diagonal direction. Just then one of the cars of defendant company was east of Division street, coming on in the direction of plaintiff. The front part of the car collided with plaintiff's wagon, and caused the injury of which plaintiff complains, and for which he asks for damages.

The defendant answered by a general denial, and in addition charged that plaintiff was guilty of contributory negligence.

It appears that wagons, carts, and carriages pass frequently to and fro on the avenue, and on the night of the accident, in addition to these, there was a "sweeping machine" at this point, drawn by three mules. They took up a good portion of the avenue. Plaintiff's contention is that, owing to the dangerous rate of speed at which defendant's car was running, and the "sweeping machine," and a wagon which was in his

way when he attempted to cross from one side of the avenue to the other, he was unable to make it in time to avoid the accident.

The driver of the "sweeping machine," a witness for plaintiff, testified that he had passed the car some 30 feet when the collision took place. Plaintiff, he said, was driving a gray horse, which enabled him to identify the wagon. He drove in a trot, while the mules driven by witness were walking.

If this machine had already passed the car about thirty feet, as witness states, it is difficult to understand how it prevented plaintiff from crossing the avenue. It had already passed him, and was not in his way to his driving to the side on which the sweeper was.

On his examination as a witness the following is one of the questions he answered relative to his attempt at crossing the street:

"Q. You know your 'street sweeper' did not prevent it in any way?
"A. It was not in the way."

The plaintiff, in his testimony, says:

"The wagon was about half way over the track, and, just as I was trying to get in front of the 'street sweeper,' a wagon-came along by the side, going out, and blocked me, which caused me to be blocked by the wagon and sweeper."

This is not corroborated by the driver of the sweeper. He testified he knew nothing about it.

Moreover, plaintiff alleged (we copy from his petition): That, after he had driven upon the track, a street sweeping machine drawn by several mules was driven directly in front of his wagon, and barred his passage. In his testimony plaintiff sought to prove that a wagon—not particularly the sweeping machine—was in his way, and prevented him from crossing in time to get out of the way of the car.

The car could have been seen at a distance had the plaintiff chosen to look. He admitted that he had seen it at considerable distance (about 75 yards). Taking his most favorable admission on the side of his cause, he saw the car at a distance of about 75 feet. He was driving at a trot. Why did he not drive right on, and cross the street?

Other testimony, which the jury must have believed, located him much nearer the car than he thought he was at the time. Twenty or thirty feet was mentioned. It appears to us from the result that he must have been quite near. The front of the car was shattered in great part, and the wagon on which plaintiff was was broken in two, and part remained on the car front as it passed on to about 700 feet further.

The testimony discloses that the rate of speed of street cars in Shreveport is 12 miles an hour, and that was about the rate of speed of defendant's car at the time of the accident. The force of the impact must have been great. Its noise was heard at some distance. It appears that the brakes were disabled. The lights were put out, the block shoes were loose, and in its uncontrollable condition it slipped on, by the force of its momentum, the distance we have already mentioned.

We are informed by the testimony of the motorman, who is not contradicted, and whose testimony we have no reason not to believe, that he cut off the electricity in time; that he set his brake, and then reversed the power.

It could not prevent the collision, as the wagon was up to the car.

The point is urged that the speed of the car must have been dangerously fast for the car to run the distance it did after the collision. This view would have great, and even controlling, weight, if it were not for the force of the impact and its effect in breaking up things as already stated; and, besides, the direct testimony shows, we take it, that on wet rails—it had rained a short time prior to the accident—cars might slip on the number of feet mentioned, if not un-

der control, as this was, owing to no fault of the motorman, as we infer.

There are two parties to this accident—one, the motorman, who should at all times be alert while on duty; the other, the plaintiff, who undertook to cross, and assumed the risk of crossing when threatened by immediate danger.

The plaintiff, as a witness in his own behalf, stated that "he made a dash to get across." From that point of view an attempt made with full knowledge of the coming car while facing it as it comes, if at all reckless, must be held under repeated decisions upon the subject to bar recovery.

There is not sufficient evidence of a conclusive character to establish the fact for which plaintiff contends and to exonerate him from carelessness.

While those who use the public streets have rights they cannot be relieved from, the necessity of exercising reasonable vigilance and attention in view of an advancing car which he has opportunity to see and does see. White v. R. R. Co., 42 La. Ann. 990, 8 South. 475.

Drivers must avoid reckless driving in advance of a coming car. Ponsano v. Street Railroad Co., 52 La. Ann. 245, 26 South. 820.

The rights of the public to use the streets and the street railroad company's to use their tracks are reciprocal. Mr. Elliott, in his work on Roads & Streets (second edition), says:

"Neither being superior nor paramount to the other, except that, as the company cannot so readily stop its trains or cars and is confined to its track, it has the right of way of passage thereon, and persons who are upon the track must leave it and give way until the train or car has passed."

The use becomes extraordinary where the traveler sees the car, and yet ventures to cross, although he knows that it is dangerously near.

The jury and the judge saw and heard the witnesses. They observed their manner of testifying. They were familiar with the locality. They arrived at the conclusion that defendant is not liable. To recover, it devolved upon the plaintiff to prove the erroneousness of the verdict and judgment. A careful reading of the testimony has not convinced us that error had been committed. The issues are mainly of fact.

We do not take it that there is any dispute regarding the law.

To the jury's verdict regarding facts some importance, in the nature of things, is attached.

The verdict and judgment are affirmed.

PROVOSTY, J., not having heard the argument, takes no part.