(38 South. 92.)

No. 15,347.

LEWIS v. VICKSBURG, S. & P. RY. CO.*

(Jan. 30, 1905.)

MASTER AND SERVANT—INJURY TO EMPLOYÉ—
CONTRIBUTORY NEGLIGENCE.

1. Where a railroad company is operating its cars within the limits of its own yard, it is not bound at all times and under all circumstances to maintain a lookout upon the forward end of every car that is moved. The question of precaution is one of reasonable sufficiency, and, when the precaution taken is sufficient to guard against injury to any one save a person who does inadvertently that which he would otherwise do only with the intention of committing suicide, it cannot reasonably be said that such precaution is insufficient.

2. Conceding that it would have been safer for the company to have maintained a lookout, literally, from the front end instead of from the side of the car, it is extremely doubtful whether such precaution would have availed to save the employé, who walked on the track immediately in front of the car, from being injured, since the lookout might at the moment have been directing his attention to the other side, or he might not, from the mere fact that he saw a person walking toward the track, have realized, until too late, that such person was oblivious of the existence and approach of the car.

3. In any event, when reasonable precautions have been taken by it, the failure of a railroad company, operating its cars within the limits of its own yard, to take every precaution that might be required in a public and frequented thoroughfare, is slight negligence in comparison to the later negligence of an employé in the yard, the conditions of whose employment require that he should at all times be on the lookout, within those limits, for moving cars, but who walks immediately in front of a moving train; and this later negligence must, under such circumstances, be held to be the proximate cause of his being injured.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Charles Lewis, tutor, against the Vicksburg, Shreveport & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Hall & Jack, for appellant. Wise, Randolph & Rendall, for appellee.

---

*Rehearing denied February 27, 1905.

Statement of the Case.

MONROE, J. Plaintiff brings this suit on behalf of the minor heirs of William Hart, deceased, to recover damages for the alleged negligent killing of their father. The answer is a general denial and a plea of contributory negligence. The facts, as they appear in the record, are as follows:

Speaking in terms of approximation (particularly as to the points of the compass), the defendant owns and uses as part of its railroad yard the east half of square 25 in Shreveport, bounded north by Cotton, east by Marshall, south by Lake, and west by McNeil, streets, and has established thereon a roundhouse, a sandhouse, a turntable, and several main and spur tracks and switches.

The roundhouse has exits on the McNeil street side, and stands about 15 feet back from the banquette. Defendant's main track, running through from McNeil to Marshall street, lies to the south of the roundhouse, and on the south side of the main track there is another parallel track, which also runs through the square. Shortly before 6 o'clock on the evening of December 16, 1903, William Hart, whilst employed as the helper of Patterson, a machinist (who was doing some work on a locomotive that stood on the track last mentioned, some 20 or 30 feet east of the McNeil street line), was sent by Patterson to the roundhouse for a bucket of water. In going and returning it was necessary for him to cross and recross the main track mentioned, and also a spur track, which lies between the main track and the roundhouse, the distance between the roundhouse and the north rail of the main track being about 25 or 28 feet. Hart reached the roundhouse safely, but in returning to the engine, where Patterson stood waiting for and watching him, he walked on the main track immediately in front of a car that was being pushed by a locomotive in the direction of Marshall street, and was so badly injured that he died within a few hours. The evidence indicates

that the engine upon which Patterson was waiting was standing a few feet further east than the point from which Hart left the roundhouse, so that his course was a trifle oblique with reference to the crossing of the main track, and he presented his right side in the direction from which the car approached, with his face and body turned slightly in the other direction. The car by which he was injured had been taken from the turntable (a little to the southeastward of the roundhouse) over the spur track, a distance of about 150 or 200 feet westward, from which point, having entered upon the main track, it was, as has been stated, pushed by the engine, which was moving forward over that track to the eastward. It was what is called a "combination" car, about 60 feet long, with a door in each side and each end, and with a platform at the end next to the locomotive, but none at the other, or (as the car was moving) forward, end. The train, if it can be so called, was moving at the rate of from three to five miles an hour, and the fireman was ringing the bell of the locomotive, but there was no one on the lookout, and no light immediately on the forward end of the combination car. The yard foreman had been standing on McNeil street, and, seeing that that street was clear, and that the track beyond to the eastward was also clear, got on board of the combination car, as it passed, on the south side, and in the door upon that side, from which position he continued to look ahead, but, of course, could not see a person approaching from the other side. Another of the defendant's employés had thrown the switch, and (likewise seeing that McNeil street and the track beyond were clear) had given the signal for the train to move eastward, and he, too, got on board the combination car, as it passed, by means of the steps, next to the locomotive, on the north side.

There was also a helper on the pilot beam of the engine. The accident happened in the defendant's yard, at a point 29 feet to the eastward of the east side of McNeil street, and the train was stopped within the length of the combination car; the injured man having been taken from between that car and the footboard of the locomotive. Patterson testifies (and his testimony is uncontradicted) that he saw Hart leave the roundhouse and approach the moving train, and, realizing (though at the last moment) that he was oblivious of the danger by which he was threatened, "hollered to him, * * * to warn him the car was coming; he was liable to get killed." Being asked, "You called as loud as you could?" he answers, "Yes, sir; as loud as I could holler." And it is shown that Hart was then but 20 feet distant from him, and about 8 feet north of the center of the main track, which is 4.8 feet in width.

There is no doubt that Hart could have seen the train if he had looked in that direction, though there was an engine in the roundhouse blowing off steam, and making a noise sufficient, possibly, to have prevented him from hearing it. It is shown, also, that, although the defendant has had for some years large signs posted, warning the public from trespassing on its property, and though it had for a year a man stationed at its bridge over Marshall street to discharge that function, the public nevertheless make very free use of the track upon which the accident occurred, and of that which runs parallel to it, particularly, as we infer, a certain class of laborers going to and returning from their work. The injured man had been in the defendant's employ for a long time, and had been working for a year or two in the yard where he met his death. He is said to have been about 34 years of age, and to have been earning $50 a month. There was a verdict and judgment in favor of the plaintiff in the sum of $1, and he has appealed. The defendant has answered, praying that the judgment be so amended as to reject the demand entirely, but the answer was not

filed within three days before that upon which the case was set down for argument.

## Opinion.

The first question to be decided is, not whether the defendant failed to discharge a duty which it owed to the public (because, as the result proves, it had sufficiently acquitted itself of its obligation to the public by seeing that McNeil street and the track beyond to the eastward were clear, before the train was permitted to move into that territory), but whether it failed to discharge a duty that it owed to William Hart, one of its servants, whilst he was engaged in work for which he was employed, and the ordinary risks of which he had assumed. And, if this question be decided in the affirmative, the remaining question is whether the failure of the master or the imprudence of the servant was the proximate cause of the accident.

The defendant, before moving its train, not only saw that McNeil street was clear, but it saw that the track running through its private yard was clear beyond the point at which the accident occurred, and, as a further precaution, its yard foreman took a position in the side door of the forward car, from which he could see to the front and to the south side, of the train, as it advanced, and also to the north side beyond the point at which his view was obstructed by the end of the car, up to which point he had just seen, from the street, that the track was clear. The only danger to have been apprehended at the place where the accident occurred therefore was that during the interval of about a quarter of a minute which was to elapse between the foreman's last look from the street and the moment when the train should reach that point some one, not then visible, on or near the track, might place himself immediately in front of the train. This danger the instinct of self-preservation and the obligation resting upon every man to take thought for his own protection, considered, seemed exceedingly remote, and was one with respect to which, operating its train within the limits of its own yard, and considered with reference to its servant employed in that yard, we are of opinion that there was no failure of duty on the part of the defendant. A railroad yard, in which there is a roundhouse, turntable, main track, sidings, and switches, and where cars are sent to be cleaned and repaired, turned around, shifted, and made up into trains, is a place in which a railroad company must necessarily be allowed greater latitude than is permitted upon the streets of a city or town, and we are not prepared to hold that in such a place the company must at all times and under all circumstances maintain a lookout upon the forward end of every car that is moved. The question of precaution resolves itself into one of reasonable sufficiency, and when the precaution taken is sufficient to guard against injury to any one save a person (and that person an employé, familiar with, and who has assumed, the ordinary risks of the place) who does inadvertently that which he would otherwise do only with the intention of committing suicide, it cannot reasonably be said that such precaution is insufficient.

Beyond this, and conceding that it would have been safer for the yard foreman to have maintained his lookout literally from the front instead of from the side of the car, it is extremely doubtful whether such additional precaution would have saved Hart's life, since the foreman might well have directed his attention for a quarter of a minute to the locomotive on the south side of the track, upon which side he was as much bound to keep a lookout as upon the north side; or, as was the case with Patterson, who was watching Hart from the engine in question, and, as is the case with motoneers, engineers, and drivers generally, he might not, from the mere fact that he saw a

person walking toward the road, have realized, until *too late*, that such person was oblivious of the existence and approach of the vehicle of which he was in charge. In any event, the failure of the defendant, operating its cars within the limits of its own yard, to take every precaution that might have been required in a public and frequented thoroughfare was slight negligence in comparison to the later negligence of Hart, the conditions of whose employment required that he should at all times be on the lookout, within those limits, for moving cars, and whose failure to observe that precaution must, under all the circumstances of the case, be regarded as the proximate cause of his death. It is only necessary to say in regard to the cases relied on by the learned counsel for the plaintiff (Hamilton v. R. R. Co., 42 La. Ann. 824, 8 South. 586; Downing v. R. R. Co., 104 La. 508, 29 South. 207; Lamkin v. McCormick, Receiver, 105 La. 418, 29 South. 952, 83 Am. St. Rep. 245; S. & N. A. R. Co. v. Donovan [Ala.] 4 South. 142; Koegel v. Mo. Pac. R. R. Co. [Mo. Sup.] 80 S. W. 905; and L. & N. R. R. Co. v. Pott's Adm'r [Ky.] 17 S. W. 185) that the facts upon which they rest are very different from those here presented.

The answer of the defendant not having been filed in time; there can be no amendment of the judgment appealed from (Code Prac. art. 890; Succession of Trouilly, 52 La. Ann. 279, 26 South. 851), and the same is accordingly affirmed.