LAND, J.
This is a suit for damages for personal injuries sustained by the plaintiff while walking down the main track of the defendant company at Yellow Pine during the evening of January 27, 1906. Plaintiff was struck by a loaded box car, one of several, which, in charge of a brakeman, were moving by the force of gravity in the same direction down the main track. The ease was tried by the court, and judgment was rendered in favor of the plaintiff for the sum of $3,000. Defendant has appealed, and plaintiff has answered, praying for an amendment of" the judgment by increasing the award of damages to $10,350, the amount sued for.
Yellow Pine is the headquarters of the defendant company, which operates a short line of railroad terminating at Sibley on the Vicksburg, Shreveport & Pacific Railroad. The Globe Lumber Company has a large plant at Yellow Pine, and the tracks of the defendant are located on lands belonging to the lumber company.
Besides the main track, the defendant had a spur track which was operated in loading and unloading cars for the use and benefit of the lumber company. The, main track runs north and south. The spur track is on the west side of the main track. The commissary store of the lumber company and the station platform of the railroad are north of the main line. The plant and yard of the *42 lumber company are south of the main line. A short distance south of the platform and store is a private roadway running across both tracks and leading into the yards of the lumber company. We annex hereto a plan showing the locus in quo.

The plaintiff, a carpenter, who had been working on' a house some half mile east of the main line, quit his work about 6 p. m. on January 27, 1906, and proceeded on his way home, which was some distance south and west of the main line. He stopped at the *44 commissary to make a trifling purchase, and thence walked to the roadway crossing, intending to cross and to proceed along the planer platform, which was well lighted with electric lamps. Plaintiff found the crossing obstructed by a live locomotive, with the engineer and fireman in the cab, standing on the spur track. At this moment several loaded cars in charge of a brakeman were coming south on the main line, and had nearly reached the crossing. Plaintiff saw these cars, but failed to observe that they were in motion. Instead of crossing the tracks in front of the locomotive or behind it, plaintiff walked south on the main line, and never stopped, turned, or looked until he heard the grinding of the car wheels behind him. He then endeavored to step off the track, and partially succeeded in doing so, but one of his feet was caught and crushed by the wheels. The engineer and fireman shouted to the plaintiff to get off the track, but he either did not hear or did not understand the warning. The brakeman and others, persons in the immediate vicinity, heard the shouting. The accident occurred 42 feet south of the crossing. The loaded cars were moving at a rate of from four to six miles per hour. It is evident that the moving cars were dangerously near the crossing when the plaintiff stepped on the main track. The cars must have been illuminated by the rays from the headlight of the locomotive. Plaintiff, according to his own testimony, saw the cars, but failed to observe that they were in motion, and did not hear the warnings given by the engineer and fireman. The tracks were in the yard of the railroad company. The main track was used to some extent by pedestrians in daylight, but not at night, because of the switching of cars which commenced immediately after 6 p. m. every evening. On the evening in question the crew, as was customary, were engaged in making up • a train for the next morning. The locomotive had pushed several loaded cars up the main line beyond the head of the switch. The cars were there held by the brakes, while the locomotive backed down on the spur track, in order to leave the main track clear. When the clearance was made, the engineer gave two sharp whistles as a signal for the release of the brakes. The brakeman obeyed, and the cars came rolling down the grade. It was the intention to stop the cars a short distance below the crossing. The brakeman applied the brakes as he cleared the head of the switch, which was about 133 feet above the crossing. When he heard the shouting, the brakeman tightened the brakes.
The plaintiff testified that he did not hear the whistles that were sounded for the release of the brakes. Then he either must have been oblivious of his surroundings, or must have been in the store at the time. Under the latter hypothesis the cars must have started before he left the store, and he must have walked faster than the cars were moving. We think that the plaintiff was oblivious of his surroundings. He saw and heard without perceiving. He did not appreciate the situation. This is shown by his statements made immediately after the accident to a number .of persons. Mr. Martin, president of the plaintiff company and also president of the lumber company, testified as follows:
“He said: T saw the engine, and I heard the whistle, and I saw the cars, but I did not sense it.’ I asked if he did not see the cars coming and he said: ‘No; I thought the cars were standing still.’ ”
Plaintiff made several statements to Dr. Buffington, who attended him professionally, to the effect that he saw the ears on the track, but thought they were standing still; that he heard some one “hollo,” but he did not know that they were “holloing” at him; and that “he should have been there,” as it was the switching hour. Mr. Eulbright, road master, testified as follows:
“I asked him how he came to get hurt, and he said he started down the track, and then stopped and looked and saw the cars; but thought *46 that they were standing still, and he heard the whistle and holloing, and what he said then I don’t remember; but he said there was no one to blame but himself.”
There is other testimony tending to show that the plaintiff stated that he heard, but did not heed, the shouting of the engineer and fireman. Mr. Lee Martin’s attention was attracted by the hallooing, and he looked and saw the plaintiff walking down the track and the cars coming about at the switch point. The brakeman was tightening the brakes. Plaintiff kept on walking down the track, and the cars kept coming, and the hallooing continued until plaintiff was struck.
There can be no reasonable doubt that plaintiff was negligent from the beginning to the end of the transaction. He had several routes by which he could have reached his home. He chose the most dangerous. He saw cars on the main track and a locomotive on the spur track. He did not look long enough to perceive that the cars were in motion, but walked down the main track without casting a glance behind. He heard, but did not pay any attention to, repeated cries of warning. He was oblivions of his surroundings, and apparently indifferent to his own safety.
This cause seems to have been decided in favor of the plaintiff on the theory that the defendant’s employes might have avoided the accident by using proper precautions, such as sounding the danger signal, and thereby warning the defendant to look out, and the brakeman to set his brakes sooner. The engineer and fireman, as soon as they saw the danger of the plaintiff, repeatedly shouted to him to get off the track. This was the most natural and most speedy mode of warning a person within short hearing distance. The brakeman was already setting the brakes, and testified that he did all he could to stop the cars. Whether the sounding of the whistle would have caused the plaintiff to get off the track or to turn and perceive the cars in motion is very doubtful, considering the obtuse¡ness of sight and hearing manifested by him on that occasion. The fault of the engineer, if any, was an error of judgment committed on a sudden emergency created by the plaintiff. The fallacy in the predicate of our learned brother below consists in the assumption that the engineer was negligent in not using all possible means to avert the accident.
“As a general rule a trespasser on the track who fails to make use of his eyes and ears to keep himself informed of the approach of trains in all directions will be held guilty of such contributory negligence that be cannot recover, notwithstanding the concurrent negligence on the part of the railway company.” 1 Thompson on Negligence, 450.
Under the English rule a railroad companj is entitled to a free track, and, in the event of an injury to a trespasser, its line can he. held liable only for an act which is wanton, or for gross negligence in the management ol1 its line, which is equivalent to intentional mischief. Id. 449. This doctrine was practically approved in Schexnaydre v. Railway Co., 46 La. Ann. 251, 14 South. 513, 49 Am. St. Rep. 321, the court-saying:
“But, where a party goes on the track for the purpose of using it as a highway, he, to a certain extent, assumes all risks, and it would require very gross negligence, amounting to malice, to make the railroad company liable for an injury to him. And this rulé is particularly applicable when the deceased or party injured has a safer mode of travel by a public highway.”
In that case a deaf mute was walking on a railroad track, and was run over and killed. The engineer seems to have done all that he could to warn the defendant and to avoid the accident. The remarks of the organ of the court were therefore obiter dictum. The “last clear chance” doctrine is thus expressed by Mr. Thompson, quoting from Harlan v. St. Louis & C. R. Co., 65 Mo. 22:
“When it is said, in cases where the plaintiff has been guilty of contributory negligence, that the company is liable if by the exercise of ordinary care it could have prevented the accident, it is understood that it will be so liable if by the exercise of reasonable care, after a discovery by defendant of the danger in which the party stood, the accident could have been prevented, or if the company failed to discover the danger *48 through the recklessness or carelessness of its emplqyés, when the exercise of ordinary care would have discovered the danger and averted the calamity.” Id. 449.
In McGuire v. Railroad Co., 46 La. Ann. 1543, 16 South. 457, the obiter dictum in Schexnaydre v. Railway Co., 46 La. Ann. 251, 14 South. 513, 49 Am. St. Rep. 321, was in effect overruled, and the court adopted the “last clear chance” doctrine enunciated supra. This rule has ever since been applied by this court. It calls for “ordinary care,” and not for extraordinary care, and the use of all possible precautions. In a similar case this court held that the railroad employés were not required to exercise unusual vigilance and extraordinary promptness and coolness. White v. Illinois Cent. R. Co., 114 La. 825, 38 South. 575.
The engineer and fireman did what the average man would have done under similar circumstances. They shouted to the plaintiff, who was in hearing distance, to get off the track. That plaintiff did not hear and heed was not their fault, and it is not shown that the result would have been different if the engineer had, instead of shouting, given the danger signal.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs of both courts.
BREAUX, C. J. I concur in the decree.
MONROE, J. I dissent.