(49 South. 696.)

No. 17,339.

DUBOSE v. NEW ORLEANS RY. & LIGHT CO.

(May 10, 1909.)

1. DECISORY OATH ABOUT CONDITION OF DEFENDANT'S ROAD.

The answers to interrogatories propounded by plaintiff to defendant's employés on facts and articles prove that the roadbed, the rails, the cars, and the running appliances and devices were in good repair.

2. STREET RAILROADS (§ 81*)—OPERATION—DUTY.

The accident did not occur at a crossing. The rule applicable to crossings has no direct bearing.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 172–177 ; Dec. Dig. § 81.*]

3. RIGHT TO USE STREET AND CARE REQUIRED.

The right to the use of the street and the extent of care each should exercise—the pedestrian and the company—gave rise to the question for decision.

4. RATE OF SPEED—STREET CAR.

While the rate of speed (15 miles an hour) was too rapid, that rate has received some sanction.

5. STREET RAILROADS (§ 98*)—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.

If the plaintiff, despite the speed, was at fault, he cannot recover.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 98.*]

6. STREET RAILROADS (§ 98*)—DUTY OF PEDESTRIAN TO LOOK AND LISTEN.

The pedestrian should look and listen before stepping on the track of a street car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 215 ; Dec. Dig. § 98.*]

7. OPERATION OF STREET CAR.

The car was not traveling on a narrow and crowded street, late at night. There were few persons on the street. The car was lighted. The street is straight. The coming car and its usual noise could have been heard.

8. STREET RAILROADS (§ 98*)—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.

The plaintiff suddenly stepped from behind an automobile, standing still, to the track. It was not possible for the motorman to stop the car in time to avoid the accident.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208 ; Dec. Dig. § 98.*]

9. CONTRIBUTORY NEGLIGENCE.

Plaintiff, by leaving the place where he was in the rear of the automobile and stepping on the track, gave rise to the proximate cause.

When he crossed over to the coming car with which he collided, he was about five feet from the coming car. Had the car been running slower, the danger would have been the greater, as he would have had time to step further on the track.

(Syllabus by the Court.)

10. STREET RAILROADS (§ 81*)—INJURIES TO PERSON ON TRACK.

The necessity of being careful about the speed of a street car is not as urgent at 12 o'clock at night as it is during the active business hours of the day, when there are many persons and vehicles on the street.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 81.*]

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Action by James G. Dubose against the New Orleans Railway & Light Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Howell Carter, Jr., Stafford & Lambert, and Henry W. Robinson, for appellant. Hall & Monroe, for appellee.

BREAUX, C. J. Plaintiff is a farmer, and at times during the year travels as a salesman. He is 50 years old.

He sued for $28,080.50 damages for asserted personal injuries.

The district court rejected his demand.

In December, 1906, he came to New Orleans to take employment with Flashpoller Company as a traveling salesman.

After having met his employer and agreed with the firm to go on the road, he returned to his room and retired early for a night's rest. He was restless, could not sleep. He arose, dressed, and repaired to the street for a walk to compose his nerves and invite sleep, and on his way back from his walk he attempted to cross a street not far from his hotel.

Not being well acquainted with the city, he did not recall, while testifying, the name of the street.

Other witnesses who were present and saw the car strike him located the accident near the corner of St. Charles street and Perdido street, a well-known intersection of these two streets.

The latter, Perdido, extends no further toward the river than St. Charles street.

After the blow inflicted by the car, the testimony is that it ran on a greater distance than cars generally run after appliances are put on to stop them. The testimony disagrees as relates to the distance it ran immediately after the accident. From 50 or 60 feet to 250 feet is the varying testimony of the witnesses. All agree that the car was running at a rapid rate of speed.

The motorman testified, however, that it could not have been over 15 miles an hour, as that was the maximum speed of the car.

The plaintiff was on the river side of St. Charles street crossing over and coming from behind an automobile, which was at rest on the left side of the street going up.

The front of the automobile was toward the coming car.

Plaintiff was hit in the face and thrown against the curbing on the south side of the street. The impact with the car resulted in grave and painful injuries rendering him unconscious.

After he had recovered his consciousness, he was taken to the hospital.

He was confined to his bed over a month, and suffered excruciating pain. He was very much bruised.

One of the plaintiff's complaints is that the car was not in good condition. The brakes did not sufficiently respond to the motorman's appliances. The roadbed was not in good repair. The rails were covered with ooze from the mud near by and were slippery.

These averments have lost their importance. Plaintiff propounded interrogatories on facts and articles to defendant's employés. They were answered in accordance with the order of court, and on return of the answers they were offered in evidence by the plaintiff.

Under well-settled rules, he is bound by the answers. Of this later.

Plaintiff charged that the defendant and its employés were negligent in running the car at too great a rate of speed and in not stopping it in time to avoid the casualty.

Defendant's contention is: That plaintiff was out of view of the motorman; that he was covered from sight of the motorman by an automobile, which was standing near the curbing of the street on the river side; that plaintiff came suddenly from the side of the street to the front of the car; that he came out from behind the automobile, three, four, or five feet from the advancing car.

The averment is that the automobile was standing right in front of the Orpheum Drug Store, and that it was on plaintiff's coming

out from the sidewalk right behind it and starting to cross the street that he was struck.

In regard to answers on fact and articles, to which we referred above in stating the salient facts:

The employés to whom questions were propounded testified that from time to time the company made needful repairs to its roadbed and everything connected with the road, that it had been inspected, and that everything about the track and cars and appurtenances was in good running shape.

There is a complete denial in the answers of witnesses of all averments regarding the asserted bad condition of the road. It follows that the road must be taken to have been in good condition.

The testimony about the ringing of the bell of the car—another incident which figures in nearly every accident within the limits of a city—is conflicting.

The first witness for the plaintiff did not recall anything about bells, another paid no attention, and still another did not remember hearing bells.

The motorman, witness for the defendant, swore that he rang the bell, which testimony is corroborated by the conductor.

Two witnesses, one the wife and the other the husband, Mr. and Mrs. E. H. Wilson, not at all interested, said that the motorman was ringing his gong at the time. We will refer again to the testimony of these two witnesses, as it is important. They had no interest whatever in the controversy.

Now regarding the accident itself:

The witness whose name is Drouet (not an employé of the road) said: That he was standing by the restaurant named "The Rathskeller" on the river side of St. Charles street near Perdido street at about 11:50 o'clock p. m. He saw the car coming from above on its way down at full speed. That plaintiff was in front of Dr. Pratt's drug store. From there he crossed into the street and passed around the rear of the automobile in front of the coming car. He was struck by the car and thrown to the street near the gutter. The witness adds that the car was going too fast.

This witness is in the main corroborated by the employés of defendant.

Mr. and Mrs. Wilson, the witnesses before referred to, stated: That they were going up St. Charles street. The car came down at full speed. They saw the plaintiff when he crossed from the sidewalk behind the automobile, and saw the car hit him; saw the top part of the dashboard strike him about the bridge of the nose, throwing him down on the side of the gutter. That plaintiff was unconscious three or four minutes. That he was a very tall man and almost reached the top of the dashboard with his nose. That when he was struck he had one foot on the track and one foot on the street. The motorman could not do anything, as he could not see the man behind the automobile, and, if the street car had been going slower, the plaintiff would have been in the center of the track and would have been killed. That the accident was not the fault of the motorman.

The motorman testified that he put on the "reverse" and did all he could to stop the car.

It is in place to state that the plaintiff is slightly deaf.

Also, that the rails were made slippery by the dense fog.

The following quotation specially referred to by counsel for plaintiff in his brief we will insert here. They are plaintiff's answers as a witness:

"Q. There was no car approaching you?
"A. No, sir; I did not see anything at all.
"Q. Did you hear anything on either side?
"A. Yes, sir; I think, but I am not sure. I think I heard some kind of a noise in crossing the street. I looked to my right, and just then I was struck. I thought I heard a noise of some kind. I am not sure of that. You

know how it is with a country fellow in the city. I thought I heard some noise approaching me, and I looked to the right."

He added that he did not see the automobile.

The following is a contradiction of the testimony just quoted:

To Pagnac, the motorman:

"Q. You did not hit the automobile at all, did you?
"A. No, sir; when I came near the automobile he ran right out, and I struck him, and when I struck him I pulled the trigger, but the car kept slipping, and she stopped about 70 feet from where I hit him.
"Q. He came out from behind the automobile?
"A. Yes, sir.
"Q. How far was the car from the automobile when he came out from behind it?
"A. My car was right about the front, well just like this. This is the hind wheel of the automobile (indicating), and this is the front wheel (indicating), and he stepped out. and the automobile was about four feet from the track."

There was a slight variance in the testimony of the witness Pagnac at one time, but he corrected his testimony by stating that he saw plaintiff right behind the automobile, and that he was just on the track about a foot from the track when he saw him; that the automobile had a top to it.

The weight of the testimony shows that there was an automobile, as before stated. It is not so certain that it was an automobile with a top. We are inclined to the opinion that it had a top. It was in winter. In winter nearly always these vehicles have a top. Besides, several witnesses testified that it had a top.

The witnesses testified that the car was running at a high rate of speed. One of the number testified (and he seems to be supported by the facts) that it was about 15 miles an hour, as the car could not run any faster. That was the maximum number of miles of its speed.

Another witness testified that it was running 20 to 25 miles an hour. This witness evidently had an extravagant idea of the speed.

We must say that 15 miles an hour is too fast. None the less. it has received judicial sanction.

See Hebee v. New Orleans R. R., 110 La. 978, 35 South. 251.

Despite the rapid rate of speed, if the cause of the accident was owing to the fault or imprudence of the plaintiff, he is not in a position to recover damages. See decision just cited, supra, page 978 of 110 La., 35 South. 251.

Perdido street, near which the accident happened, is not a crossing of St. Charles street. It follows that there was no crossing where the accident occurred.

The time of the accident was about 12 o'clock at night, an hour when there are very few passengers on the street. The necessity of being careful about speed is not as urgent then as as it is during the active business hours of the day, when there are many persons and vehicles on the street.

At the moment of the accident, we have noted that there was only one automobile standing near the curb. It was in line of vision both of the motorman and of the plaintiff.

The complaint of plaintiff at this point is that the motorman did not check his car.

It is not negligence if the motorman does not check his car to pass an automobile standing on the side of the street, as it was not a crossing. Besides, the rule in question applies when a car meets another at crossings.

The failure to moderate the speed of the car will not afford good ground of complaint, if the plaintiff failed in performing the full measure of his duty, if he failed in exercising his faculties of hearing and seeing.

There is ground to think that he did not so exercise his faculties of seeing and hearing.

The testimony is that the motorman did seek to stop his car. It could not be stopped

in time. The plaintiff stepped from behind the automobile and was at the time within five feet of the front of the car.

According to two witnesses, who were not in the employ of the defendant, the plaintiff at the time of the nearly fatal blow had one foot resting on the asphalt of the street and the other on the first rail of the track. He came unexpectedly on the track.

The stepping suddenly on tracks on which there are running cars is always dangerous if the pedestrian does not exercise some little care. If he does not exercise some degree of care, there is scant ground for his recovering damages.

It is true that the company must be held to the necessity of exercising some care— "such a care as a reasonably prudent man would exercise under the circumstances." Elliot, § 1156.

But this accident did not occur at a crossing, as we have already stated. The quotation from the above commentator applies to crossings. At other places (on the road away from crossings) pedestrians must not step unexpectedly in front of the coming car. The duty of a company at a crossing is different from that along its line away from crossings.

We have alluded to the duty at crossings in order to bring out and make as plain as possible the necessity of caution at other places than crossings.

Now as to negligence:

If the evidence proves that the plaintiff was partly at fault, he cannot recover. Baldwin, Am. R. R. Law, p. 421.

The distance covered by the car immediately after the accident is referred to by plaintiff as indicating the negligence of the defendant company.

Despite the decision in the Hebee Case, cited supra, the testimony certainly proves a too rapid rate of speed of the car.

But that does not relieve plaintiff from all fault if he was negligent.

All of plaintiff's witnesses testified that, had it not been for the rapid rate of speed, the plaintiff would have been killed, as he would have been struck on the track and crushed. As it was, the car struck him on the side and threw him off in the direction of the curve, instead of running over him.

This ground is reiterated by plaintiff, and for that reason it was taken up at this time for discussion.

Plaintiff charges that defendants were negligent because they retained the motorman in their service, although he had several accidents before the one of which he complains.

It can easily be said in defense of this charge that the present accident was the only grave accident that had fallen to his lot as motorman. The motorman does not appear to have been incompetent.

The motorman denied that he had ever met with other accidents. The explanation afterward was that he meant he had never met with a serious accident which had given rise to damage suits.

There is no proof before us in matter of these accidents preceding the one before us for consideration that the motorman was at fault.

There is no merit in this charge.

Plaintiff's next complaint is that the track was slippery from moisture and oozing with mud; that the road was not in good repair.

In argument learned counsel for plaintiff cited Mauer v. Brooklyn R. R. Co., 87 App. Div. 119, 84 N. Y. Supp. 76 (not the court of last resort of New York).

In the cited case the plaintiff attempted to cross the street following a diagonal line on the street in which the track of defendant was laid in order to take another street. Plaintiff looked and saw a coming car. She looked a second time, and it was already within a half block from her. In a moment after she was struck.

The court found that, although the street

which she had left and the street to which she was going were not directly opposite each other, none the less there was an intersection and crossing. The court in substance said: It being a crossing, the right of the pedestrian and the right of the defendant were equal.

There is considerable difference between the cited case and the case here. In the latter the testimony does not prove that Commercial alley in this city, from which the plaintiff came a few moments before the accident, and Perdido street, constituted a street intersection or crossing, as they are some distance apart. Plaintiff just before the accident occurred was not attempting to walk from one of the streets above named to the other. He followed the sidewalk, and then turned at right angles behind an automobile, and then to the front of the coming car.

The cited case has no application because there is not a constructive or any other crossing at the place of the accident. The testimony shows that at this place St. Charles street is straight. The line of vision is unobstructed up and down the street. There was no bustle of any kind on the street. All was quiet. The car was lighted. Witnesses swore that the bell was ringing. There must have been the usual noise and rumbling of the car.

Because of these it is reasonable to infer that plaintiff should have seen the car, and would have seen it if he had looked with any degree of care. If he had seen the car, it is also reasonable to infer that there would have been no accident.

Learned counsel for plaintiff also cited with confidence Wells v. Brooklyn R. R., 58 Hun, 389, 12 N. Y. Supp. 67.

In the cited case plaintiff did not see that the car was coming. The court said he probably assumed that the rate of speed was less than it was and decided for plaintiff.

In the case before us for decision, plain-tiff did not assume anything, for he did not see the car at all, although there was no good reason shown why he did not see the car coming. It may be that plaintiff's view was obstructed by the automobile, of which we have already made some mention.

That alone would not afford ground sufficient for holding the defendant liable. It was his misfortune not to have seen the car from behind the auto car.

The position here is peculiar. Plaintiff at one time in argument urged through learned counsel that he did not see the car owing to the automobile. Defendant complains of the same obstruction of view. Both are unfortunate in this respect.

Plaintiff having left the place of safety on the sidewalk and stepped behind the automobile, and unexpectedly from that point to the front of the car, he cannot recover.

It was said in argument that plaintiff's head protruded above the automobile, and that if the motorman had looked he would have seen him.

This contention is met by the fact that in the dark it is not always an easy matter to locate a person standing at some little distance behind an obstructing body. The protruding head may have been taken as that of some one sitting in the automobile, and then it may well be that the motorman did not suspect that the plaintiff would leave the place of safety at which he was in order to attempt to cross.

One of the witnesses for plaintiff was near him at the time. He testified that he saw the car coming and walked obliquely in order to pass behind it after it had passed.

It is unfortunate that plaintiff was not equally as prudent.

Personal injury cases frequently present varying phases. They are usually hard cases. The application of rules must be made as they are laid down in jurisprudence. Sympathy or feeling on account of loss and suf-

fering must be laid aside. It must be a matter of judgment.

We have given this case careful consideration. It was not possible for us to arrive at another conclusion.

For reasons stated, the judgment is affirmed.