The judgment appealed from is affirmed, with costs.

---

(82 South. 590)

No. 23005.

NOLAN v. ILLINOIS CENT. R. CO.

(May 5, 1919. Rehearing Denied June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ⚖══377—DUTY OF TRAINMEN TO PERSON ON TRACK.

Trainmen observing a person about to walk onto the track, have the right to believe that he will both see and hear approaching train in time to avoid accident.

2. RAILROADS ⚖══387—CROSSING ACCIDENT—PROXIMATE CAUSE—NEGLIGENCE OF PEDESTRIAN.

Where one, without looking or listening, walks onto a track and is struck by a train running on schedule time at ordinary speed, his negligence must be regarded as the proximate cause of his injury.

3. RAILROADS ⚖══370—DUTY OF RAILROAD—OPERATION THROUGH TOWN.

Railroad operating its train backward through populated parts of a city or town, without proper lookouts, with tender in front of engine, was negligent.

4. RAILROADS ⚖══357—OPERATION THROUGH TOWN—DUTY OF RAILROAD.

Railroad operating within city limits, but in part of city that is not populated, is not held

to the same strict accountability as when it operates through thickly populated city or town.

5. NEGLIGENCE ⚖══83 — "LAST CLEAR CHANCE."

The doctrine of "last clear chance" is not synonymous with the doctrine of "negligence."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Last Clear Chance; Negligence.]

6. RAILROADS ⚖══390—ACCIDENT—LIABILITY OF RAILROAD—LAST CLEAR CHANCE.

Railroad cannot be held liable for injuries to one on the track upon doctrine of last clear chance, where its negligence and that of person injured were concurrent and continued up to the moment of the accident.

7. RAILROADS ⚖══396(2) — ACCIDENTS — PRESUMPTION—NEGLIGENCE.

The mere happening of an accident causing injury to one walking on the track does not raise the presumption of negligence on the part of railroad company.

8. RAILROADS ⚖══383(1) — USE OF TRACKS — EXERCISE OF CARE — DUTY TO LOOK AND LISTEN.

A person about to walk upon the track must look and listen for approaching trains.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Linda S. Nolan, tutrix, against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Hunter C. Leake, Lemle & Lemle, and Arthur A. Moreno, all of New Orleans (Blewett Lee and R. V. Fletcher, both of Chicago, Ill., of counsel), for appellant.

McCloskey & Benedict, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff, the widow of John P. Nolan, and the natural tutrix of their minor child, Lodiska, has sued the defendant railroad company for and on account of the minor for $20,000 in damages, because of the death of John P. Nolan, the father of the minor, which she alleges happened during

the day of August 22, 1915, on or near the main track of the defendant company within the limits of the city of New Orleans, near the Poydras Junction, which is in the proximity of the crossing of defendant's railroad track near Washington street; that the train which caused the accident to and death of John P. Nolan was a suburban train, operated between the city and Harahan, and that the train was negligently and faultily managed; that the deceased in no way contributed to the accident; that the accident was entirely due to the fault and negligence of the defendant company, and, if the deceased was negligent, the defendant had the last clear chance to save the situation and avoid the accident.

Defendant answered that it was entirely without fault; that the deceased was guilty of contributory negligence, and it had no chance to avoid the accident.

There was a trial by jury, a verdict in favor of plaintiff for $5,000, and defendant has appealed. Plaintiff has answered the appeal, and has asked for an increase in the judgment.

It appears from the evidence that, while the vicinity of the accident is within the limits of the city of New Orleans, the track does not run through or on any street at the point of the accident; that there are no streets or sidewalks there; that there are no houses or improvements of any kind there; that there are very few persons in the neighborhood; that it is an open space or place without trees or obstructions of any kind; that the track is straight for more than half a mile; that the train was moving on schedule time, at about the rate of 15 miles an hour; that a whistle had been blown for the crossing which the train was approaching; that the bell of the engine was ringing automatically; that the train was making the usual noise made by trains while in motion; that the day was bright; that one in the possession of his normal faculties, as plaintiff alleges the deceased to have been at the time, could and should have seen and heard the train in time to have avoided the accident; that the train was properly manned, with the engineer on one side and the fireman on the other side of the engine cab, who were on the lookout; and the fireman, who was the only witness to the accident, testified that he saw deceased approaching the track, but supposed that he would stop to permit the passing of the train, and that, when he realized that the deceased did not look or appear to hear the train or the bell, and that he was coming on the track regardless of prevailing conditions, he yelled to him, the deceased, and that the latter came steadily forward; that there was no time in which to stop the train after he realized that the deceased would go upon the track; and that the deceased was struck by the front part of the tender which had been placed forward of the engine.

One witness only testified on behalf of plaintiff as to the accident. But his evidence is so contradictory and confusing that it is of no assistance whatever. He says that he saw the deceased a few minutes before the accident; that "Mr. Nolan was walking [on the main line track] when I saw him. * * * Yes; walking outside, 50 feet from it. * * * Mr. Nolan was on the right side going towards Washington street; the other side is bad walking, so he was on the other side when I saw him. * * * He was on the side by the grab, by the path; he was walking along the path on the outside of the track." The witness did not see the train until after the accident. He said the train did not whistle or ring a bell. "I seen Mr. Nolan walking on the side of the track, and I was 50 feet away, was walking on the track," "going out to Broad street"—that is, ahead of the moving train. He was walking on the same side of the track. "I was 50 feet towards him, coming from the basin. I was walking behind Nolan, on the same track. * * * No; he was going by the main line

and I was coming from the basin; I was about 50 feet from the track. * * * The suburban, yes; I saw it coming [the train which killed Nolan]." In answer to the question, "Did you see how far from the crossing Mr. Nolan came on the main track?" He answered: "I guess about 5 or 6 feet from the crossing [at Washington street]. He was walking near to it when I saw him. * * * He was on the main line." "He [Nolan] was going out, and I was coming this way. * * * I know he was on the main line when I saw him. * * * Sure you could have seen it [the train], too, if you looked around."

If the witness is to be understood as testifying that Nolan was walking on the main track ahead of the moving train he is contradicted by the only other witness to the accident, the fireman on the train, who testified that Nolan was not on the track when he first saw him, and that he was approaching the track and came into collision with the forward end of the tender. The fireman testified that he saw Nolan as he stepped on the track and when he was struck by the tender.

[1] It is well stated in Cook v. R. R. Co., 130 La. 917, 58 South. 767:

"Trainmen have a right to believe that a person approaching the railroad track will exercise his senses of sight and hearing so as to perceive the approaching train in time to avoid all accidents."

And the fireman in this instance had a right to believe that Nolan, who was in possession of his normal faculties, as alleged by plaintiff, would both see and hear the train which was moving on the track, which was plainly in his view, and when he was about to cross or to walk on the track.

Why Nolan did not see or hear the train is not explained by the evidence. The view was open and unobstructed; and the train was running on schedule time, at ordinary speed of 15 miles an hour. The fireman saw Nolan coming towards the track and shouted at him, but Nolan paid no attention to him, and came steadily on.

The facts in this case are very similar to those recited in the Cook Case, supra.

Plaintiff in argument suggested the theory that Nolan "was walking along the beaten pathway next to the outside of the cross-ties, when suddenly, in extremis, he appreciated the proximity of the train, jumped in the wrong direction, and was struck by some projection of the tender." There is no evidence to support this theory; but, if it is correct, it was through no fault or negligence on the part of the defendant company, whose train was properly manned; and the ordinary warnings of its approach had been given. There is no evidence that there was a projection on the tender.

[2] Plaintiff argues that the train was being operated negligently in four respects: First, the locomotive was running with the tender in front of it, at the forward end of the train; second, that the engineer, who had sole control of the whistle, brake, and throttle, was unable to see Nolan, who was on the right side of the track; third, one blast of a whistle for a crossing (and no ringing of the brass bell) given over a quarter of a mile away was not sufficient warning; and, fourth, that yelling is not such a warning as the law exacts. But, none of these causes was the proximate cause of the accident. The proximate cause of the accident, and the sole cause, was the act of Nolan heedlessly and negligently walking onto a track upon which was a swift moving train without looking or listening.

[3] Plaintiff cites authorities to the effect that it is negligence on the part of a railroad company to operate its train through the streets of a city or town with the tender in front of the engine; and so it is through the populated parts of a city or town without proper lookouts; but the place of the accident in this case, while within the city limits, was

away from all habitations, streets, and almost entirely away from the traveling public.

[4] Under such circumstances railroads will not be held to the same strict accountability as they would be on the streets of a thickly populated city or town.

The second charge is that the running of the engine backward caused the engineer, who had sole control of the whistle, brake, and throttle, to be unable to see Nolan. It is true that the engineer was on the left side of the track while Nolan was on the right side; but the fireman was the lookout on the right-hand side, and he saw Nolan, but he could not save the situation, because he cannot be held to have known that Nolan intended to walk heedlessly onto the track where the train was moving towards him. So, if the engineer had been on the right side of the cab of the engine, he could have done no more than did the fireman.

The third charge that the whistle for a crossing given a quarter of a mile away was not sufficient warning, is not borne out by any evidence. The warning was given at the usual place for the crossing, and the evidence does not show that it was insufficient for that purpose.

The last charge is that yelling was not such warning as the law exacts. And it is not. But the usual and the ordinary warnings were given; and the yelling of the fireman was in addition thereto. None of these warnings had the effect of keeping Nolan from going onto the track.

[5, 6] There is nothing in the evidence upon which to base the doctrine of the last clear chance. That doctrine is not synonymous with the doctrine of negligence; and a railroad company cannot be held liable thereunder where it is clear that after discovering the danger of a person upon a track, brought about by the latter's negligence, the train crew fails to do everything necessary to avoid injuring him, and where the negligence of the railroad and of the person injured are concurrent and continue up to the moment of the accident. Cowden v. Shreveport Belt Co., 106 La. 236, 30 South. 747; White v. Illinois Central, 114 La. 825, 38 South. 574; Jones v. Railroad Co., 121 La. 39, 46 South. 61; Harrison v. Railroad Co., 132 La. 761, 61 South. 782; Wolf v. Ry. & Light Co., 133 La. 891, 63 South. 392; Castile v. O'Keefe, 138 La. 479, 70 South. 481; Callery v. Railroad Co., 139 La. 763, 72 South. 222.

[7, 8] The mere happening of an accident does not raise the presumption of negligence on the part of a railroad company. The negligence of the company must be proved with certainty, and it must be shown that such negligence was the proximate cause of the accident. Persons using railroad tracks are held to the exercise of the care that the danger of the situation makes necessary; and a person about to walk upon a railroad track must look and listen for approaching trains; and where he fails to do so, and walks upon the track in such close proximity to an approaching train as to be struck by it before it can be stopped, he is guilty of such negligence as will preclude a recovery in damages for his death; and the fact that the train was negligently operated will not render the company liable. White v. Railroad Co., 114 La. 825, 38 South. 574; Riley v. Shreveport Traction Co., 114 La. 135, 38 South. 83; Lewis v. Railroad Co., 114 La. 161, 38 South. 92, 108 Am. St. Rep. 335; Jones v. Railroad Co., 121 La. 39, 46 South. 61; May v. Railroad Co., 123 La. 647, 49 South. 272; Dubose v. Railway Light Co., 123 La. 1029, 49 South. 696; Tatum v. Rock Island Railroad Co., 124 La. 921, 50 South. 796; Harrison v. Railroad Co., 132 La. 767, 61 South. 784; Elliott (2d Ed.) p. 1171.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of defendant dismissing plaintiff's suit at her cost.

MONROE, C. J., not having heard the argument, takes no part.