The opinion of the court was delivered by
Nicholls, C. J.
On the 16th of March, 1893, the wife of Joseph Vincent, the plaintiff, was returning in a buggy to her home near *934 Olivier Station, in the parish of Iberia. Accompanying her was her sister ana her sister’s child. The public road near Olivier (which is a flag station of defendant’s road) runs nearly parallel to the company’s tracks, but when almost opposite to the station it makes an abrupt turn at or near Veazey’s store, and crosses the main track to the other side. The day was cloudy and a strong wind was blowing. Mrs. Vincent was driving. Reaching the turning point in the road she drove directly to the point of intersection of the road with the track, without stopping, ■ and as the horse was crossing the track it was struck by the locomotive attached to a train of cars operated by employees of the defendant company. The horse was killed, the baggy was entirely demolished and Mrs. Vincent (mortally wounded) died a few moments after the accident. The sister and her child, after lingering a short time, also died. The train with which the buggy collided was not the regular passenger, but a special train on inspection duty. It was running just before it passed the intersection of the public road with the track at Olivier Station at about forty miles an hour. The whistle of the locomotive was blown at or near the whistling post, four times, according to custom, and again near the crossing. The bell seems to have been also rung. The appliances of the train were in good condition and the employees of the company at their respective posts. We have examined the record carefully, and the examination so made forces us to the conviction that the verdict of the jury and the judgment based upon it are contrary to the law and the evidence. We have found no fact, either of omission or commission on the part of the company’s employees which could give rise to an action of damages against the defendant. We find, on the contrary, that the unfortunate accident, by which the plaintiff’s wife came to her death, is directly traceable to heedlessness and want of care and proper caution on the part of the deceased.
Plaintiff’s pleadings refer to the train as being a special one, the speed at which it was running as being dangerous, particularly in view of the darkness of the day; to the speed not having been checked as the cars approached the crossing and to obstructions to the view along the line of road from Veazey’s store to the crossing. The evidence shows that along the bar fences, between which the public road ran, were a few scattering trees of small size and also some weeds between eighteen inches and two feet high, but *935 that they left, none the less, in clear view, any train approaching npon plaintiff’s track, particularly to those sitting in an elevated buggy, and that the track itself was raised above the general level of the surrounding country. The approach to the main tiack from Veazey’s store being almost perpendicular, all that a person sitting in a buggy would have had to have done in order to ascertain the ■exact situation was to have looked to the right across the side of the buggy, if the curtain on that side were raised, or if it were down, to have leant forward a little and looked across. It so happened that the curtain on the right side (the very one which should have been up) had been lowered in consequence of a threatening rain and the persons inside of the buggy, in spite of that fact, drove forward without attempting in any way to guard against possible danger. Mrs. Vincent, the evidence shows, lived near the railroad, had often crossed this identical track, and was familiar with the surroundings. The distance between the store and the crossing was considerable, and furnished ample time and opportunity for examination and discovery, but no precautions, it seems,were taken. In order to reach the track it was necessary to move up an incline leading to the track, but no halt was made when almost the slightest touch upon the reins could have held the horse in check. We are satisfied the track was reached before a suspicion of danger entered the minds of any of the party. Did the simple fact that the hour for one of the regular trains had passed and that for the other had not been reached warrant the belief that no train was likely to pass? It has been held that it does not; that parties having occasion to cross a track must bear in mind that, in the management and business of railroads, special trains are liable to be sent forward at any moment, and that the rule that a person before attempting to cross a track must stop, look and listen to guard against danger is not confined to certain hours of the day or night, nor limited to particular trains. A railroad track of itself has been held to be a warning of danger. Hinken vs. Iowa Cent. Ry. Co., 66 N. W. 883.
Plaintiff, in respect to the obstruction alleged, overlooks the fact that if such obstructions really marked the view that they themselves were as much concealed from the view of the defendant’s employees as the latter were from the persons in the buggy, and that the very fact of the existence of the same imposed additional caution *936 upon parties approaching the track. Beach on Contributory Negligence, p. 203, Sec. 65; Patterson’s Railway Accident Law, Sec. 177.
We do not understand plaintiff’s allegations as charging that the employees of the railroad saw the approaching buggy, or that by the exercise of such reasonable care as was consistent with their duties they might have seen them any sooner than they did. Their allegations as to the difficulty under which they themselves labored in seeing surrounding objects by reason of the misty cloudy weather and the intervening trees and weeds negative the idea of such a claim hiving been advanced on their part against the defendant as a cause of action. There is no attempt to show that defendant’s employees failed in their duty from the moment the danger was seen up to the time of the accident, nor is there any charge that the defendant was in fault in respect to any of the appliances connected with the train. Their real contentions are that the whistle was not sounded, the bell was not rung, the train was moving at a dangerously fast rate, and its speed was hot slackened as the cars approached the crossing. The' signals, as we have said, were properly given, but they were not heard — possibly because the wind was high; possibly because the ladies in the buggy had their hats on, covered with their veils; possibly because engaged in conversation and apprehending no danger they gave no heed to what was passing around them. We have no reason to suppose that the accident would have been avoided had the train been moving at a slower rate than it was — it is not so charged. It is referred to as having been dangerously fast. Plaintiff charges that the employees of the defendant had no right to move the train at as fast a rate as it was going on a misty and windy day, and knew, or must have known, of the danger of a collision. We do not find that the train was moving at a faster rate than that at which passenger trains frequently move between regular stations. Olivier was only a flag station, and this particular train had no reason to stop there, or to expect that it would be stopped at that point. The evidence does not show such a condition of things as the allegations charge — the day was dark and somewhat misty and a rain was threatening, but the hour was just after noonday, and all objects were visible. The evidence discloses the existence of no fact outside of the alleged fact itself that the wind was high and the day was not bright, tending to show that it was the engineer’s duty to slacken the speed at which the train was moving.
*937 It has been said in other jurisdictions that trains must be run with speed on dark nights and on misty days, and that doing so raises no inference of negligence in the absence of special facts going to call for particular precaution. Omaha R. R. Co. vs. Wright, 66 N. W. 842. Trains are run by schedule, one train conforming itself to the movements of the others, and it would be a dangerous rule to establish that weather conditions in one particular neighborhood should control and regulate the speed of the trains in a special vicinity. It is not shown that the lane at Olivier crossing is a much frequented crossing, or that there were grounds for supposing that per- ' sons proposing to cross there would not be governed by ordinary rules of caution and prudence.
Appellee presses upon us that the fireman was firing up, as he reached the whistling post, and that he should not have been doing so, but should have desisted until the crossing was passed. That if he had been looking out on the left of the cab he would have seen the buggy approaching .the crossing sooner than he did. The fact that the fireman was engaged in putting in coal as the train approached the whistling post was a fact shown by his own testimony and was not looked to or assigned as furnishing any ground of complaint in the pleadings as we have said. There was no attempt to show that in firing up at the time he did, he was not at that time doing exactly what was necessary to be done in the line of his duty. If he had been looking out at that time there would have been nothing to indicate, so far as we see from the evidence, that the parties inside the buggy would attempt to cross over the track directly in front of a train rapidly approaching them and directly visible to them had they looked.
We are of the opinion that the deceased was guilty of such contributory negligence in this case as to cut off the claim for damages..
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury and the judgment appealed from, based therein, be and the same are hereby annulled, avoided! and reversed; and it is now ordered, adjudged and decreed that plaintiff’s demand be rejected with costs, in both courts.