The opinion of the court was delivered by
Breaux, J.
Plaintiff, tutrix of her minor children, and personally, brought this suit for ten thousand dollars damages caused by the asserted negligence of defendant’s agents and employees, which resulted, she avers, in the death of her husband, father of her ■ children.
The defendant corporation was the owner of a line of street railways running through Louisiana avenue. She alleges that her late husband was crossing the public street about 10 o’clock at night, near his residence fronting on the avenue, between Franklin and Liberty streets, when one of defendant’s electric cars negligently and carelessly ran over her husband, inflicting injuries causing death . a few minutes after the accident; that her late husband was lawfully • on the street and was at the time duly careful.
The defendant pleads the general denial, and avers that the plaintiff’s husband lost bis life by his own carelessness and recklessness, and that if there was negligence on its part, there was contributory negligence on the part of plaintiff’s husband.
From a description of the place of record, it is shown that the defendant company has a double track on Louisiana avenue; one track for the car running down on the lower side of the avenue, between Baronne and Freret streets, and the other track for the cars going up to Carrollton on the upper side of the neutral ground, between *1304 Dryades and Howard streets. Between the two tracks there is a steam railroad track of the Illinois Central Railroad.
In the front of the cottage occupied by plaintiff and her late husband he had raised the banquette and laid a plank walk from the banquette to the neutral ground. There was no passable banquette on either side in front of this lot, and he and his family for more than three years used the plank walk and neutral ground for ingress and egress; for the ground where there should have been a banquette was low and muddy, the gutters wide and deep and walking was practically impossible.
There was a path between the Illinois Central track and the track of the defendant company, well known (it is asserted by the plaintiff) by the employees of the defendant company; where people were frequently seen walking. On the night of the accident the deceased, a few minutes prior to the accident, was standing on the Illinois Central Railroad track and conversing with an acquaintance. Leaving his acquaintance, he walked in the direction of his house, which was about half a block away from where they were standing. His home was on the lower side of the track. He was going in the same direction that the car was going. The acquaintance with whom he was conversing walked away in an opposite direction, and met the alleged offending car, running, he says, at á rapid speed. The noise of the car stopping, because of the accident, a short distance from where it had passed him, attracted his attention. He walked back to the place of the accident. His back, at the moment of the collision was turned to the car. He saw nothing of the accident. He says that the headlight of the car as it passed him was dim. No alarm bell was sounded.
The deceased was struck by the car when he was opposite the plank walk, immediately in front of his house. Evidently he had left the walk and was crossing defendant’s track on his way to the plank crossing leading to his gate when he was struck. The car ran about forty feet after the blow; the headlight was broken, also the fender. Two of plaintiff’s witnesses testify that there was no ringing of the bell prior to the accident. The motorman, as a witness for the defendant, testified that he could see that the deceased was in danger from where he was, and that he sounded the gong and uttered a cry to him; that he (the deceased) stepped immediately in front of the car to his right. He and the conductor testified that the headlight was burning brightly. This is a summary of the salient facts.
*1305 The case was tried before the court without the intervention of a. jury. The judgment was for plaintiff in the sum of ten thousand, dollars. The defendant appealed.
Our attention is directed to the fact that the width of the path on which the defendant was walking, between the tracks, was not large, only about seven feet. The car must have been near him when he left this path or street and stepped in front of the car to go over to the plank walk opposite his home. Three steps would have-carried him across. As he was struck while attempting to cross, it-is, in our judgment, evident that his first step on the track must-have been made when the car was dangerously near. Witnesses for the plaintiff saw the coming car at some distance. The noise made by the running car was clearly heard by witnesses who were not on the track at all.'
The width of the walk was, we have seen, about seven feet. We assume that the deceased was about the centre of the walk at the time he turned to the right to cross the track of the defendant. We assume further that four steps was the distance from the centre line of the walk in question to the centre line of defendant’s track. Upon this basis about two and a half steps must have been the distance stepped from the centre line of the walk to the outer line of the track over which the car runs; and one and a half steps the distance between the outer line of the car to the centre line of the track.
From the fact that the headlight and the fender of the ear were broken, we judge that the deceased was at or very near the centre line of the railroad track when he was struck.
At the moment that the deceased crossed the outer line of the car, the car must have been quite near to him, a distance which can be computed with some degree of accuracy by reference to the time it takes to walk over a space in length of about one and a half steps. It was impossible, it is evident, to stop the car, after the deceased crossed the outer line, in time to prevent the accident. The question arises, was it prudent, in the dark, to attempt to cross.
Three grounds of alleged negligence urged were: The asserted speed of the car, the dim light, and failure to ring the alarm.
The evidence upon these points is conflicting, between the witnesses for the defendant and those for the plaintiff.
The issue brings us to a consideration of the rules — that one *1306 approaching a railway crossing or attempting, at any place, to cross a railroad track, must carefully look up and down the track, and in that connectioa we must determine whether it applies to an electric .street railway.
The rule itself is supported by a long list of decisions. Its correctness does not admit of any question. When street cars ran slowly and could be stopped within a distance of a few feet, the rule for the pedestrian to exercise his senses of sight and hearing and to stop, look and listen, did not apply as it does to the electric cars (even in the case of horse cars one was enjoined to be careful in walking on :a railroad track, or in attempting to cross it). Greater prudence is required of a pedestrian who crosses a railway track of a steam or •electric car in a city. It is his duty to exercise his senses of sight -and hearing.
The evidence of plaintiff’s witnesses in regard to the speed of the car is, in general terms. No attempt was made to approximately fix the rate at which it was running. Granted that it was running with speed, that, of itself, was not negligence, if all needful care was exercised by the company. The dim headlight and the fact that there was no ringing of the bell at a place not known as a regular public •crossing, does not relieve the pedestrian ®f his obligation to exercise ordinary care to avoid an injury. There was light, although it may have been dim; there must have been noise made by the moving car very near the place of the accident. One who in the night•time, with full knowledge that the car may come at any moment behind him, attempts to cross, must use his senses to avoid an accident. In a recently well considered case this court said: It is a well recognized rule that a person before attempting to cross the •track of a steam or electric car should look to ascertain whether cprudently the crossing should be attempted.” Snider vs. Railroad Co., 48 An. 12.
Again, in the same opinion, which has a direct application to the •case before us: “ The motorman upon the car had no reason to anticipate that plaintiff would attempt to cross the street under existing conditions. Plaintiff knew perfectly well that the moving ■ car was bound on its regular trip up to a point above that street on a ifixed line, and must, therefore, inevitably cross the path he was taking as he moved across.”
This .case has the support of four preceding decisions of this *1307 court—Schulte vs. Railroad, 44 An. 510; Herlisch vs. Railroad Co., 44 An. 280; Smith vs. Railroad Co., 47 An. 833, and Schexnaydre vs. Railroad Co., 46 An. 248.
As to the' dim light, failure to ring the bell, and the speed of the •ear, the evidence was conflicting.
The car was not without light; it had the light of the car and of the headlight.
The very short distance between the deceased and the car rendered it impossible to ring the bell in time to warn him to get off the track.
The car was an ordinary electric car, not noiseless; it was plainly heard by all the witnesses who testified upon the subject.
These are important considerations which have received our careful attention.
Weighed with the fact that the victim of the sad accident suddenly turned and stepped, one step or a step and a half from a safe path to •a very unsafe place, we have concluded that he was imprudent to a degree which renders it impossible, under the rule heretofore announced by this court, to allow damages.
This court has decided that the rule “ stop,-look and listen” applies to one attempting to cross an electric car track. There is greater reason for its application at night, when the motorneer is less able, ■in the darkness, to see persons near or persons crossing or attempting to cross. Nothing of record shows that the least attempt was made to guard against the danger of an approaching car on a track •over which cars frequently pass.
It is therefore ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed. It is further •decreed that plaintiff’s demand is rejected.