(80 South. 613)

No. 21670.

## HOWELL et al. v. VICKSBURG, S. & P. RY. CO.

(Dec. 2, 1918. Rehearing Denied Jan. 6, 1919.)

*(Syllabus by the Court.)*

1. RAILROADS ⊛═➔389(1)—PERSONAL INJURY—
LIABILITY.

In a suit for damages against a railroad
company, where it is shown that the accident
complained of was unavoidable, and that the
company is without fault in the premises, the
claim for damages will be denied.

*(Additional Syllabus by Editorial Staff.)*

2. DAMAGES ⊛═➔91(1)—PUNITIVE DAMAGES.

Punitive damages are not allowed in a civil
suit for damages.

Appeal from Fourth Judicial District
Court, Parish of Lincoln; J. B. Holstead,
Judge.

Suit by Mrs. Emma Howell and her di-
vorced husband, George S. Long, against
the Vicksburg, Shreveport & Pacific Railway
Company. Verdict for plaintiffs, judgment
thereon, and defendant appeals. Reversed,
and judgment rendered in favor of defend-
ant, dismissing the suit.

Stubbs, Theus, Grisham & Thompson, of
Monroe, for appellant.

R. L. Williams, of Arcadia, for appellees.

SOMMERVILLE, J. Mrs. Emma Howell,
and her divorced husband, George S. Long,
sue defendant jointly for $46,000, for injury,
suffering, and death of their minor daughter,
Mary Long, aged eight years, who was run
over by defendant's train, through the al-
leged fault and negligence of defendant's em-
ployés.

Defendant answered, admitting that Mary
Long was struck by defendant's engine, and
that she received a flesh wound on one foot,
but it denied that it was in any manner
guilty of neglect or fault, and it alleged that
the accident was unavoidable. It denied
that death resulted from the accident.

In an amended answer, defendant pleaded
a compromise between Mrs. Howell and it,
by which it paid her $250 in full settlement
of her interest in the claim. This settlement
was proved on the trial. Nevertheless, the
jury returned a verdict in favor of Mrs.
Howell and George S. Long, for $1,000, and
judgment was rendered accordingly, with in-
terest. Long did not compromise his claim.

Defendant has appealed, and plaintiffs ask
that the judgment be amended by increasing
it to the amount claimed, including that por-
tion for punitory damages.

[2] Punitory damages are not allowed in
a civil suit for damages. Vincent v. Mor-
gan's La. & Texas R. R. & S. S. Co., 140 La.
1027, 74 South. 541; Dunson v. Baker, No.
21628 on the docket, 80 South. 238,[1] this day
decided.

[1] Mary Long was a bright child, eight
years of age, who, while on her way to school
with three other girls, trespassed upon the
track of the defendant company, near the
regular stopping place of the train in the
town of Simmsport.

Mary Swanner, one of the four girls, and
she was the only one called by plaintiffs as
a witness, testified that they, the girls, saw
the train coming and heard the locomotive
blow; that they got off the track in safety,
excepting Mary Long, whose foot became
caught in a frog. The little witness gave a
graphic description of the scene, and told of
courage and great presence of mind on the
part of all of them. In answer to questions,
she said:

"Q. What caused her (Mary) to get hurt?
A. We were going to school, and we saw the
train coming, and the train blowed, and we
started to get off, and her foot got caught in
the frog. Q. What did the other little girls
present do? A. We tried to pull her foot out.
Q. What did the other little girls do? A. They

---

[1] Ante, p. 167.

tried to stop the train. Q. What did they do to get it to stop? A. Got out in the middle of the track and throwed up their hands and hollered. Q. How many of the buttons did you succeed in getting unbuttoned? A. Four. Q. You were trying to unbutton them? A. I was trying to unbutton the shoe. * * * I unbuttoned four of them. Q. After you could not get her foot out of the shoe, nor the shoe out of the frog of the railroad, what did you do to keep the train from running over her? A. I caught her and held her out to the side of the track. Q. What happened then when the train came by? A. It pulled Mary's foot out (of the shoe) and she fell down beside the track. Q. The train had gotten pretty close, and when she went to step off the track her foot got caught in between the main line rail and the guard rail? A. Yes, sir. Q. Now, as soon as that was done, and you could not get it out, you stooped down and began to unbutton the shoe? A. At first I tried to get her foot out, and I couldn't, and I tried to unbutton her shoe. Q. You unbuttoned four buttons of the shoe? A. Yes, sir."

The testimony of this little witness sustains that for the defendant. The engineer, fireman, and baggageman testify that the whistle had been blown, and that the train was slowly rolling into the station at Simmsport when the four little girls were seen on the track. They had been properly warned, they had seen and heard the train, and it was reasonable on the part of the train crew to suppose that the girls would leave the track in time to avoid any danger from the train. The engineer saw them stooping, and he thought they were putting pins on the track, and he did not realize the danger until it was too late for him to avoid it. At that time the train was 120 to 130 feet from the girls. It was going from 15 to 25 miles an hour. He put on the emergency brake, sanded the track, and made a quick stop, but not in time to avoid the accident, which resulted in knocking Mary's foot out of her shoe and lacerating the foot slightly.

Defendant has shown by a preponderance of evidence and with legal certainty that its employés were free from fault and negli-gence, and plaintiff's suit should have been dismissed.

Mary's death did not result from the accident which befell her. It was quite conclusively shown that she died from strychnine poison. But it is not necessary to further touch upon that phase of the case, as defendant is not responsible for the accident which befell the child.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that there be judgment in favor of defendant, dismissing plaintiffs' suit at their cost in both courts.

O'NIELL and LECHE, JJ., concur in the decree.