(82 South. 677)

No. 21519.

RIDDICK et al. v. SEPULVEDO et al.

(Feb. 3, 1919. On Rehearing, June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. EXECUTORS AND ADMINISTRATORS ⬤⇒379—
SUCCESSION — SALES — VACATING — AC-
COUNTING FOR PURCHASE PRICE.

Though minors' property will be restored
to them where a sale to pay debts has been de-
clared to be null on account of irregularities,
they will be required to account for that por-
tion of the selling price which actually went to
pay the debts of the deceased from whom they
inherited the property.

2. EXECUTORS AND ADMINISTRATORS ⬤⇒379—
SUCCESSION — SALES — VACATING — AC-
COUNTING FOR PURCHASE PRICE.

To require minors as a condition precedent
to restoration of property to account for that
portion of the selling price which went to pay
debts of deceased, from whom they inherited
property, sale of which is void, the evidence
must clearly show that the selling price was
paid to actual creditors of deceased, and not in
whole or in part to the creditors of the suc-
cession or debts created by the succession, or an
unauthorized representative of the succession,
or by any intermeddler.

3. EXECUTORS AND ADMINISTRATORS ⬤⇒408—
SUCCESSION—INSOLVENCY OF ESTATE—EVI-
DENCE.

Evidence *held* not to show that succession
of deceased was insolvent at the date of de-
ceased's death.

4. EXECUTORS AND ADMINISTRATORS ⬤⇒379—
SUCCESSION — SALES — VACATING — AC-
COUNTING FOR PURCHASE PRICE.

In controversy over rights of minor heirs
in real estate of deceased sold to a creditor of
deceased, sale to pay debts being void, *held*,
that it was not shown that proceeds of sale
had gone to pay creditors of deceased, and that
therefore minors were not liable for any portion
of the selling price.

O'Niell, J., dissents on rehearing.

Appeal from Twelfth Judicial District
Court, Parish of Sabine; Henry T. Liver-
man, Judge ad hoc.

Action by Howell Riddick and others
against W. M. Sepulvedo and others. From

the judgment rendered, plaintiffs appeal.
Affirmed in part, and reversed in part.

R. A. Fraser, of Many, for appellants.

J. C. Pugh & Son, of Shreveport, for ap-
pellees.

SOMMERVILLE, J. Lamantine Riddick
died December 29, 1900, leaving nine chil-
dren and his wife as widow in community.
Mrs. Riddick qualified as the natural tutrix
of her minor children. An inventory was
taken showing real estate valued at $570
and other property valued at $8,417.50.

It appears that Riddick was engaged in
the mercantile business and buying cotton,
and at the time of his death owed a large
amount of debts, among others to the firm
of Ardis & Co. He had in the hands of Ar-
dis & Co. 1,655 bales of cotton. The prin-
cipal part of the assets, aside from the cot-
ton, consisted of a stock of goods in a store
at Noble, La.

It appears that by the consent of all the
parties, including Ardis & Co., the eldest
son, Solomon Riddick, was placed in charge
of the store, with the view of liquidating
the assets.

The mercantile business as administered
by the son, under the control of J. B. Ardis,
did not prove profitable. In the early part
of 1902 it became evident that all of the
assets of the estate would not be sufficient to
pay the debts. This is set out in a petition
presented by the tutrix to the district
judge. In this application she asked for a
family meeting to authorize her to dispose
of the property in order to pay the debts of
the succession. The succession was appar-
ently administered by the mother as the
natural tutrix of her minor children, with
the consent of the majors as well as that of
the creditors.

Under the order of this family meeting
the property was sold at private sale to J.
B. Ardis in consideration of his paying all

of the debts of the succession, on April 1, 1902.

The act of sale states:

"This sale is made for and in consideration of the sum of $8,569.57, being an amount owed and due the said purchasers by the estate of the said Lamantine Riddick, deceased, for value received in goods and merchandise from said purchaser himself, and owing and due other merchants by said estate assumed and paid by the said purchaser for the said estate of Lamantine Riddick, deceased."

The above referred to act of sale appears to have been made in conformity with an agreement made between Mrs. Riddick individually and tutrix of the minors, the major heirs, and J. B. Ardis shortly after the death of Riddick, at which time Ardis placed Solomon Riddick, one of the major heirs, in charge of the mercantile business.

Ardis sold the real estate to defendants, and five of the heirs are suing for their interests in the real estate.

The sale of the minors' interest in the real estate has been conceded by defendants to have been null. They deny owing plaintiffs rent for the property; and, by way of reconvention, they claim the value of improvements and an amount for taxes paid by them. And defendant Ardis claims the proportion of whatever interest plaintiffs may recover in said property of the sum of $8,569.57, being the amount paid for said property and applied by him to the obligations of the father of said plaintiffs.

There was judgment in favor of plaintiffs decreeing them to be the owners of an undivided five-sixteenths interest in the real estate sued for, subject to the payment by plaintiffs to defendants within 90 days the amounts allowed defendants for improvements and taxes and for plaintiffs' portion of the succession debts paid by the sale of the property of the succession, and that no writ of possession issue until said amounts have been paid.

Plaintiffs have appealed. Defendants have not, and they have not answered the appeal.

[1, 2] It is well settled that, though minors' property will be restored to them where a sale thereof has been declared to be null on account of irregularities in the sale, they will be required to account for that portion of the selling price which actually went to pay the debts of the deceased, from whom they inherited the property. In such case the evidence must clearly show that the selling price was paid to actual creditors of the deceased, and not in whole or in part paid to creditors of the succession for debts created by the succession, or an unauthorized representative of the succession, or by an intermeddler.

In this case J. B. Ardis, a creditor, and Solomon Riddick, a major heir, intermeddled, and, with the consent of the widow in community and tutrix of the minors, undertook to continue the business in which the deceased had been engaged prior to his death. They failed to keep accurate accounts of the business, so as to show exactly what debts were due by Lamantine Riddick, the deceased, at the time of his death, when, or how, or by whom those debts were paid, or to whom the proceeds of the sale of the property of the succession were paid.

There was no valuation and appraisement of the real estate, and there were no proceeds resulting from the sale thereof. The real estate and personal property together were sold for—

"$8,569.57, being an amount owing and due the said purchaser (Ardis) by the estate of the said Lamantine Riddick, deceased, for value received in goods and merchandise from said purchaser himself and owing and due other merchants by said estate assumed and paid by the said purchaser for the said estate of Lamantine Riddick, deceased."

The real estate was inventoried at $570.50; but it is nowhere stated that it was sold for the inventoried value.

And the amount of the indebtedness "by the estate," $8,569.57, to Ardis & Co., was fixed on the day of the sale, April 1, 1902, some 15 months after the death of Riddick, during which time Solomon Riddick had been buying cotton for Ardis & Co. and carrying on a losing business in the store.

[3] Defendants in their answer aver that the succession of Lamantine Riddick was insolvent at the date of Riddick's death; and the district judge so held. But the inventory shows appraisement of real and personal property at $8,987.50. There were 1,655 bales of cotton in the hands of Ardis & Co., and a smaller number of bales of cotton in the hands of Dreyfous & Co. The probate proceedings do not state what the debts amounted to. We do not think that the estate is shown to have been insolvent.

On February 18, 1901, some 7 weeks after the death of Riddick, J. B. Ardis wrote to Solomon Riddick as follows:

"As you have all debts settled except ours and the small account of Dreyfous & Co., there is nothing to give you any trouble."

Ardis did not think at that time, when he held some 1,655 bales of cotton belonging to Riddick, that his succession was insolvent. Yet in his answer in this suit, filed November 29, 1913, he alleges the insolvency of the succession, and he names six creditors, including himself, with claims aggregating $10,850.53, which claims he says were due by Riddick at the time of his death.

Ardis testified that he had paid to five of said creditors, excluding himself, each one his distributive share, as per accounts filed by him. But he is not corroborated by any of the creditors, except Dreyfous & Co., who sustained his testimony in part.

The first statement rendered is in the name of M. L. Riddick. The first item is: "December 26, 1899, to statement rendered, $138,003.94." The next item is: "January 1, 1900, to merchandise $71.66." This last

was after the death of M. L. Riddick; and the charge was necessarily against Solomon Riddick, and not the succession of the father. Then follow other items, principally merchandise, names of merchants, cash, car express, etc., throughout every month in the year and down to March 14, 1901, aggregating $76,592.10. The credit side of the account showed receipts of cash from cotton, cash from other sources, and a promissory note due November 15th for $4,076.88, which balanced the account.

The second account is with the "Est. of L. Riddick," and begins with March 14, 1901, and it runs to Dec. 28, 1901. It amounted to $16,207.43, and was closed "December 29, 1905, by profit and loss, $2,563.38."

These two accounts show an extensive business carried on between Solomon Riddick and Ardis & Co., principally of merchandise and cash advanced to Solomon Riddick in the mercantile and cotton buying business. The credit sides of the accounts are mainly composed of sales of cotton, and some of which doubtless belonged to Solomon Riddick, as well as the proceeds of the 1,655 bales belonging to the deceased, Riddick.

It is impossible to say that the proceeds of the real estate went to pay debts of Lamantine Riddick in whole or in part. The accounts of the succession and those of Solomon Riddick are so interwoven that they cannot be separated.

Ardis testified on the trial of the case that at the time of Riddick's death he owed, other than to the Ardis firm, $2,690.87. There was inventoried some $8,417.50 personal property, most of which was sold in the course of the business carried on by Solomon Riddick in the store, and the proceeds should have gone in part to the payment of the $2,690.87 of debts due by the deceased, and the proceeds were doubtless thus used. On February 8, 1901, Ardis

wrote a letter to Solomon Riddick that all the debts of the succession were "settled except ours and the small account of Dreyfous & Co." He repeated that statement in the act of sale when he took over the entire succession April 1, 1902, when, as before noted in this opinion, he, Ardis, the purchaser, had assumed and paid for the goods and merchandise owing and due by the deceased, L. Riddick.

These debts were all paid, except that due to Ardis & Co., prior to the date of the sale of the real property sued for in this case, and were not, therefore, paid with the proceeds of the sale of the real estate.

Besides, there were no proceeds from the sale of the real estate to Ardis April 1, 1902. He bought the entire succession property for $8,569.57, but no cash was paid by him, and there were therefore, no proceeds from the sale. As already quoted from the act of sale, he took the estate for debts due to him and to others, which debts were assumed and paid by him. And there was no separate valuation placed upon the real estate which was transferred in the act of sale.

So it is quite clear that the proceeds of the sale of the real estate of the succession of Riddick did not go to pay any portion of the debts of the deceased at that time, April 1, 1902.

But defendants contend that Ardis took title to and held the real estate for account of the succession, and that he subsequently sold it and divided the proceeds between himself and other creditors of the deceased. We think the record shows that the other creditors had been paid out of the proceeds of the $5,000 of merchandise left by the deceased and sold by Solomon Riddick, and that they were paid long before Ardis sold the real estate.

And it is impossible to say what portion of the debt to Ardis & Co. may have been paid by Solomon Riddick from the proceeds of the sale of the merchandise, or, what portion was paid from the proceeds of the 1,655 bales of cotton in the hands of Ardis & Co.

J. W. Jeter, witness for defendants, testified that the account of Lamantine Riddick with Ardis & Co. "was closed up by a note signed by Solomon Riddick," dated March 14, 1901. This settlement may have referred to the cotton account, but it is not so stated.

[4] J. B. Ardis was a witness, and he did not testify as to when he sold the land, or to whom he sold, or what he received therefor. If he were acting for the succession at the time of these several sales, he should have given these details, and have shown that the proceeds went to the payment of the debts due by the deceased at the time of his death. This he has not done, and cannot do under the circumstances; so plaintiffs do not owe any portion of the selling price of the land. The proceeds of the sale of the real estate realized by Ardis are not made to appear to have gone to pay the creditors of Lamantine Riddick.

Plaintiffs' claim for rents and revenues is not sufficiently sustained to give judgment for specific amounts. It will be offset by defendants' claims for improvements and taxes. The claims for improvements are largely exaggerated, and not well sustained by testimony. In some instances they exceed the value of the property and improvements. The reconventional demand of defendants will be denied.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed in part and reversed in part so as to read as follows: Let there be judgment in favor of plaintiffs and against defendants canceling and annulling the sale to J. B. Ardis of date April 1, 1902, and that there now be judgment in favor of plaintiffs and against the other defendants decreeing the

plaintiffs to be the owners of an undivided five-sixteenths interest in and to the property described in the petition as belonging to J. M. Russel, Marshall A. Sanders, E. E. Latham, and J. T. Pugh, and that the reconventional demands of defendants be dismissed, and that all rights of the defendants against J. B. Ardis, the warrantor, be reserved.

PROVOSTY, J., takes no part, not having heard the argument.

#### On Rehearing.

PROVOSTY, J. After careful reconsideration, the court takes the same view of this case as originally.

The judgment which was set aside on application for rehearing is therefore reinstated, and made the final judgment of the court.

O'NIELL, J., dissents.