No. 8738

## ORLEANS APPEAL

## WILL J. GIBBONS v. N. O. TERMINAL CO., ET AL., Appellants

(January 5, 1925, Opinion and Decree.)

(*Syllabus by the Court.*)

1. **Louisiana Digest—Railroads—Par. 64.**
The law makes it the duty of pedestrains and drivers of vehicles upon aproaching railroad tracks to stop, look, and listen.

2. **Louisiana Digest—Railroads—Par. 63, 65.**
It will suffice, however, that a vehicle have is own momentum so checked and under control that it may be stopped instantly in case of necessity.

3. **Louisiana Digest—Automobiles—Par. 4.**
The presumption of law, juris et de jure, is that a plaintiff saw a thing that he should have seen had he looked, and that he failed to look at the proper time and in the proper manner if he did not see the things he should have seen by looking.

4. **Louisiana Digest—Railroads—Par. 64.**
It is not sufficient for a plaintiff to have looked and listened, he must have done so at the opportune time, and in an efficient manner.

5. **Louisiana Digest—Railroads—Par. 58, 60, 63.**
The failure of a railroad to close a gate or to have a flagman on the approach of a train will not relieve one intending to cross a track from the charge of negligence when, by ordinary precautions, he could have seen or heard the train.

6. **Louisiana Digest—Railroads—Par. 54, 57; Negligence—Par. 25.**
A plaintiff who is guilty of contributory negligence cannot recover, what ever may have been the negligence of the defendant.

(Civil Code Art. 2315. Editor's note.)

Appeal from Civil District Court, Hon. Hugh C. Cage, Judge.

Plaintiff's automobile and defendants' cars collided, resulting in damage to plaintiff and to his auto for which he sues defendants.

Judgment for plaintiff.

Defendants appealed.

Judgment reversed.

Henry, Cooper & Westerfield, Scott E. Beer, attorneys for plaintiff, appellee.

Monroe & Lemann, W. J. Suthon, attorneys for defendant, appellant.

CLAIBORNE, J. Plaintiff's automobile and defendants' cars collided, resulting in damage to plaintiff and to his auto for which he sues defendants.

The plaintiff alleged "that on April 9th, 1921, at about 2:25 p. m. he was driving his auto on Bienville street in the direction of the lake; that as he approached the intersection of Bienville and Basin streets, he saw the gates at said intersection, which are controlled and operated by defendants up or open, and without a flagman of either company at said intersection, and without danger signals of any kind being displayed at said intersection, to warn vehicles of the approach of any train on the tracks of said defendant companies which said tracks intersect Bienville street on Basin street; that as the traffic is in the direction of down-town on the river side of Basin street the attention of petitioner, after he saw the gates open and no signals displayed and no flagman giving warning of any danger, was directed up Basin street for the approach of vehicles going in a down-town direction, and seeing no down-town traffic and seeing the gates open, and no warnings of any kind displayed, petitioner although he had come almost to a full stop, did put on speed in order to cross the intersection of Bienville and Basin streets on the Railway tracks thereon; that as petitioner was about to reach the said track he heard some one shout "stop" and on looking down Basin street, he saw a train of passenger cars propelled by an engine of the New Orleans Terminal Co., backing into the Basin street station; that the said train of cars had been coming up very quietly, without warning, and petitioner's first intimation of its approach was the shout of said unknown party to stop; that petitioner as soon as he heard the shout "stop", applied the brakes and did all in his power to bring his automobile to an immediate stop, but without complete success, his automobile coming to a standstill with its front wheels on the track on which said train of cars was backing into the Basin street station; that said train hit the petitioner's automobile and demolished it, and seriously injured petitioner; that the collision was the proximate consequence of the gross negligence of the defendants; that by Ordinance No. 1615 N. C. S. it is made the duty of the defendants to install gates at such crossings and to have at said gates an operator, and to keep said gates closed in case of danger, or to have proper signals of danger at such places; that the open gates and absence of an operator or of danger singals was an invitation to petitioner to pass through said gates. The plaintiff claimed $750 for the value of his auto and $3,000 for physical injuries to himself.

The defendants admitted the collision but denied all other allegations of the petition, and charged "contributory negligence on the part of the plaintiff, barring his recovery".

There was judgment in favor of the plaintiff against the New Orleans Terminal Company for $800 for his auto and for $1,750 for himself and defendants have appealed.

Ordinance 1615, is filed in the transcript. It is so long that we can reproduce only excerpts from it. Secs. 7 and 9; route;

along Carondelet Walk, "into the neutral ground of Basin street, and thence up said neutral ground to Canal street, with as many tracks as may be necessary to make said neutral ground available for the passenger depot hereafter referred to".

Section 5 "That said Company, its successors, and assign, shall have the right to construct, maintain, and operate a passenger depot in the neutral ground of Basin street, from Canal to the west side of Bienville street, and to that end the neutral ground shall be widened six feet on each side from Canal street to the Basin and the roadway across the neutral ground of Basin, opposite the entrance of Customhouse street, shall be closed with gates or doors, which shall be kept open at all times except when trains are entering or departing from said depot or when trains are standing on said tracks".

The ordinance does not require an operator at the gate, nor that it should be closed in case of danger.

In the transcript there are also photographs of the defendants' railroad station on Basin street.

They represent the River side of the station, from the upper side of Bienville street down to about one hundred feet or more along Basin street towards Conti, being the whole length of the station. From those photographs it appears that the whole of that side of the station is enclosed by an iron railing or bar-fence about two-thirds of the height of a passenger car, and at a distance of three feet from the track nearest the river. The bars of the railway are several inches apart and permit a clear view through them and above them of cars within the bars and within the station.

The plaintiff testifies he saw cars within the station.

The gate is the width of the street and made with the same kind of iron railing.

It also appears that from Bienville street down Basin street in the direction of St. Louis street, two squares below, the view is unobstructed in any manner and that plaintiff could see cars on the track furthest from him as far as Conti street. Ordinance 6173, was also offered in evidence; but as the accident happened on April 9th, 1921, and the Ordinance was adopted April 19th, 1921, it can have no place in this case.

It also appears that plaintiff was not a stranger in that neighborhood. He testifies:

Q. Are you familiar with that neighborhood?

A. No, sir.

Q. Did you ever drive through there before?

A. I have been, and the gates at that time were closed. I have been in and out Iberville street.

Q. Have you ever been there when the trains were passing?

A. Yes.

Q. Were the gates closed or open?

A. Closed.

Q. Have you ever been there when the gates were open and passing through?

A. Yes.

There is no controversy about the facts of the case. The plaintiffs' auto was moving very slowly. It had come almost to a stop on reaching Basin street, and had no distance to pick up speed before it reached the tracks except the width of the street.

When the plaintiff got about the middle of Basin street, some one called out "stop", and he put on the brakes, and his front wheels were on the front platform of the train which hit him, about the middle of the gate and jammed him between a pillar of the gate and the train.

The train of cars, as testified by a companion of plaintiff in his auto, at the time of the accident, "was apparently dragging

slowly along", or as stated by other witnesses, at about five or six miles an hour.

The train consisted of four passenger cars, and two baggage cars which were being "headed in", or pushed into the station by an engine. Upon the platform nearest Canal street of the passenger car nearest Canal street were two employees of defendants standing upon the steps on either side of the car.

One was handling the "monkey tail" hose, which is a whistle for stopping the train, called an air whistle; he was blowing it frequently going into the station, all the way from St. Louis street in; when he reached ten feet of the crossing he saw plaintiffs car turned toward Canal street with its wheel on the track; he applied the air on the emergency brake to stop at once; he stopped within thirty feet; the engineer's brake is not as powerful as the air brake. The other man was also acting as guard or watchman and corroborates the testimony of the man handling the monkey tail.

The law makes it the duty of pedestrains and drivers of vehicles, upon approaching railroad tracks to stop, look, and listen.

116 U. S. 366, Nos. 8288-9286, Ct. App., 168 Fed. 21.

Ellen Murray vs. Pontchartrain Railroad Company, 31 La. Ann. 492.

Mrs. B. Hauch vs. Hernandez, 41 La. Ann. 993, 6 South. 783.

Herman Herlisch vs. The Louisville, New Orleans and Texas Railroad Company, 44 La. Ann. 280, 10 South. 628.

Barber Asphalt Paving Company vs. H. R. Gogreve, 41 La. Ann. 268, 5 South. 848.

Joseph Vincent vs. Morgan's Louisiana and Texas Railroad and Steamship Company, 48 La. Ann. 933, 20 South. 207.

Hoelzel vs. Crescent City R. Company, 49 La. Ann. 1302, 22 South. 330.

Dieck vs. New Orleans City and Lake R. Company, 51 La. Ann. 262, 299, 124, 25 South. 71.

Tatum vs. Rock Island, A. and L. R. Company, 124 La. 921, 50 South. 796.

State vs. Besancon, 128 La. 87, 54 South. 480.

Burke vs. New Orleans Ry. and Light Company, 133 La. 369, 63 South. 51.

Callery vs. Morgan's Louisiana and Texas R and S. S. Company, 139 La. 763, 72 South. 222.

Howell vs. Vicksburg S. and P. Ry. Company, 144 La. 427, 80 South. 613.

Lampkin vs. McCormick, 105 La. 418-427, 29 South. 952.

Ross vs. Sibley, 116 La. 789, 41 South. 93.

It is not required, that under the jurisprudence of this State, that vehicles should come to a complete stop. In Aymond vs. W. U. Telegraph Co., 151 184, the Supreme Court said on p. 187:

"As to the obligation to stop before crossing a railroad track, that must not be accepted so literally as to require a person upon approaching a railroad track to come at once to a position of absolute immobility but common sense and common practice both indicate that it will suffice for such person to have his own motion so checked and under control that he may stop instantly if need be."

The plaintiff testified that on his way out Bienville street he stopped when he reached Basin street he was then about sixty feet from the railroad station. He then proceeded at slow speed.

The train of cars was also at that very time moving upon the track nearest the river up Basin street at the same moderate speed. The automobile and the train of cars collided in the middle of Bienville street. This shows that at the time plaintiff's auto stopped, the train must have been at the same distance from the point of collision that the plaintiff was, that is about sixty feet, more or less. In other

words when plaintiff stopped, the train was about sixty feet from the center of Bienville street. The line of vision between the place where plaintiff was and the place where defendant's cars were formed one side of a triangle, it might be the hypotenuse, not much longer than either of the two other sides. The train was in plain view of the plaintiff, unobstructed save by the fence bars. Through them plaintiff could see the train; and if he could not see through the bars, he could see above them, for, as we have seen, the cars overtopped the railing by about one-third of their height. These cars were moving, and it is true that a moving object catches the eye better than a stationary one. It is on this principle that the disappearing light-house is built. The train of cars could have been seen coming up Basin street, not only sixty feet from Bienville street, but more than three hundred feet down to Conti street.

It was broad day light.

But plaintiff says that he looked, but did not see any train on the track. That is his fault or his misfortune. The law is not satisfied with a plaintiff looking and not seeing; he must look at such a time and in such a manner as he may see things that he should have seen if he had looked properly.

The presumption of law, juris et de jure, is that a plaintiff saw a thing he should have seen had he looked, and that he failed to look at the opportune time and in the proper manner if he did not see the things he should have seen by looking properly. Kelly vs. Schmidt & Zeigler, 142 La. 91, 76 South. 250; Hubby on Autos, p. 397, S. 33.

In the case of Provost vs. Rrd., 52 La. An., 1894, 28 South. 305, the court said on p. 1900:

"The stopping, the looking, and the listening must be made at such a time and place as to make it judicious and sufficient to save the situation". Quoting John Snider vs. New Orleans and Carrollton Railroad Co., 48 La. Ann. 1, 18 South. 695.

In Walker vs. Rodrigues, 139 La. 251, 71 South. 499, the court said on p. 254:

"Defendant Rene Rodriguez, who was driving the machine, looked too late to see the oncoming West End train to have averted an accident, and to have looked too late was not to have looked at all. Tolbert vs. Freeman, 130 La. 48, 57 South. 580; Boylan vs. New Orleans Ry. and Light Co., 139 La. 185, 71 South. 360. It was gross fault on his part not to have looked and listened for the steam train at the crossing. His neglect to do so was inexcusable. C. C. 3556, Nofl. 13; see also Perrin vs. New Orleans Terminal Company, 140 La. 818, 74 South. 160; Callery vs. Morgan's Louisiana and T. R. and S. S. Company, 139 La. 763, 72 South. 222; Nolan vs. Illinois Central R. Co., 145 La. 483, 82 South. 590; Young vs. Louisiana Western R. Co., 153 La 129, 95 South. 511."

The plaintiff also testifies that he did not hear the rumbling of the approaching cars nor the sounds of the air whistle. That they existed, however, to a certain extent is a fact. If the plaintiff did not see the approaching cars, it was equally possible that he did not hear them coming. He also testifies that he did not see the two employees on the rear platform. The fact is they were there. It must have been because plaintiff's attention was engaged elsewhere.

The trial judge in an elaborate written opinion found as a fact that the plaintiff did not look or listen because, if he had, the accident would not have happened. But he concluded that by leaving the gate open the defendant had tacitly told the plaintiff that there was no danger in passing and

had invited him to pass and was therefore guilty of negligence.

We are of the opinion, however, that the plaintiff was guilty primarily of such negligence as precludes him from recovery. Joseph P. Martinez and the State, J. P. Martinez vs. State Tax Collectors and City of New Orleans, 42 La. Ann. 682, 7 South. 796; Scholefield, Goodman & Company vs. Succession of B. J. West, 44 La. Ann. 280, 10 South. 806; Douglas Blackwell vs. the St. Louis Iron Mountain and Southern R. R. Co., 47 La. Ann. 268, 16 South. 818; John Snider vs. New Orleans and Carrollton Railroad Company, 48 La. Ann. 1, 18 South. 695; Hemmingway vs. New Orleans C. and L. R. Co., 50 La. Ann. 1087, 23 South. 952; Ponsano vs. St. Charles St. R. Co., 52 La. Ann. 245, 26 So. 820; Lampkin vs. McCormick, 105 La. 418, 29 South. 952; Borell vs. Cumberland Telegraph and Telephone Company, 133 La. 631, 63 South. 247.

All the authorities quoted by plaintiff apply to cases where the view of approaching trains was obstructed, or where the plaintiff, by the exercise of diligence, could not have seen the trains: Lincks vs. Illinois Central R. R. Co., 143 La. 445, 78 South. 730.

In Nolan vs. Rrd., 145 La. 483, 82 South. 590, the court said on p. 490:

"Persons using railroad tracks are held to the exercise of the care that the danger of the situation makes necessary; and a person about to walk upon a railroad track must look, and listen for approaching trains; and where he fails to do so, and walks upon the track in such close proximity to an approaching train as to be struck by it before it can be stopped, he is guilty of such negligence as will preclude a recovery in damages for his death; and the fact that the train was

negligently operated will not render the company liable." White vs. Illinois Central R. R., 114 La. 825, 38 South. 574; Gajan vs. Patout & Burguieres, 135 La. 161, 65 South. 17; Jones vs. Sibley L. B. & S. Ry. Company, 121 La. 39, 46 South. 61; Leader Realty Co. vs. Lakeview Land Co., 133 La. 646, 63 South. 253; Tatum vs. Rock Island Ry. Co., 124 La. 921, 50 South. 796; Harrison vs. Louisiana Western R. Co., 132 La. 767, 61 South. 784.

But the plaintiff argues, and that is his only hope of recovery, that it was negligence on the part of the railroad to have omitted to have a flagman to signal the approach of the cars, and to have left the gates across Bienville street open, which indicated to him that the road was clear and acted as an invitation to him to cross without further investigation.

Gates and flags are merely a form of warning.

But what better warning could have been given plaintiff of the presence of danger than the station itself and the tracks that ran along its length and the approaching cars. They acted as a red light bringing home to plaintiff the danger as effectively as a gate or flagman. Joseph Vincent vs. M. L. and T. Ry. and Steamship Co., 48 La. Ann. 933, 20 South. 207.

Plaintiff should have known that in the use for which the station was built and the rails laid, trains were likely to come and go at any and all times. In the case of Jos. Vincent vs. M. L. and T. Ry. and Steamship Co., 48 La. Ann. 933, 20 South. 207, the court said:

"Parties having occasion to cross a car track must bear in mind that in the management and business of railroads special trains are liable to be sent forward at any moment, and that the rule that a person before attempting to cross a track must stop, look, and listen to guard against

danger, is not confined to certain hours of the day or night, or limited to particular trains."

"The mere omission of train signals will not subject the Railroad Co., to damages if the traveler struck by the locomotive attempts to cross the track without observing usual precautions to avoid, such accidents. Eyma Brown vs. T. and P. Ry. Co., 42 La. Ann. 350, 7 South. 682; Britton & Koontz vs. Harvey, 47 La. Ann. 259, 16 South. 747; Loftin vs. L. R. and N. Ry. Co., 135 La. 33, 64 South. 972.

Nor did the fact that the gate was open absolve the plaintiff from the duty to look and listen, and to take necessary precautions.

In Brown vs. Rrd., 42 A. 350, the court said:

"Statutes and municipal ordinances in every jurisdiction prescribe specifically the duty of railway corporations in respect to railway crossings; but no failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing upon approaching a railway crossing; and whenever the due use of either sense would have enabled the injured person to escape the danger the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty."

The fact that a gate is open does not excuse one from looking and listening before crossing, particularly when the view is unobstructed. 61 Fed. 375, 157 Fed. 168, 168 Fed. 21, 179 Fed. 577, 223 U. S. 718, 229 Fed. 82, 285 Fed. 97, 262 U. S. 746, 290 Fed. 165, 8 So. 518, 3 L. R. A. 44, 108 Atl. 175, 99 Atl. 694, 104 Atl. 883. 120 Atl. 449, 40 N. E. 270, 32 N. E. 227, 27 N. E. 270, 32 N. E. 227, 27 N. E. 161, 59 N. Y. 468, 28 N. E. 149, 75 Atl. 912, 111 N. E. 960, 160 N. W. 261, 153 Pac. 731, 113 S. W. 1163, 89 N. E. 625, 84 Uac. 176, 88 S. E. 178, 33 Atl. 24, 93 Atl. 701, 94 Atl. 509, 124 Atl. 284, 93 So. 564.

Ordinance 1615 does not make it the duty of the Railroad to keep the gate closed, but, on the contrary, orders that it shall be open at all time except when trains are passing. The object is to allow traffic to go and come, except necessity require the street to be closed.

The rule is tersely and correctly stated in 33 Cyc. 947-227 Pac. 840 as follows:

"The duty of the Railroad to close the gate exists as to all who could see the train, but not to one who sees the train going in front of him."

But assuming that it was the duty of the Railroad to have closed the gate the law is that when the plaintiff is guilty of negligence he cannot recover notwithstanding the negligence of the defendant. Volenti non fit injuria. C. F. Berens vs. J. P. Dupree, 6 La. Ann. 494; Arthur Choppin vs. New Orleans and Carrollton R. R. Co., 17 La. Ann. 19; Allen, West & Bush vs. J. E. Nettles, 39 La. Ann. 790, 2 South. 609; Riddick vs. Sepulvedo, 145 La. 490, 82 South. 677; Massett vs. Keff, 116 La. 1107, 41 South. 330; Cornelius McCarthy vs. the Whitney Iron Works Co., 48 La. Ann. 981, 20 South. 171; Bridges vs. Kinder and N. W. R. R. Co., 149 La. 417, 89 South. 309; Hall vs. Allen Mfg. Co., 133 La. 1079, 63 South. 591; Williams vs. Liberty Stores, Inc., 148 La. 450, 87 South. 233.

In such a case plaintiff is the author of his own loss, id. S. 470.

In Jeansonne vs. Rrd. 100 So. 410, the trial court found that defendant had failed to give the proper signals, but that plaintiff could not recover because deceased was also guilty of negligence in not exercising ordinary care for his own safety". The Supreme Court said: "The case therefore turns almost entirely upon questions of fact. Since, if deceased was guilty of contributory negligence, it would be unnecessary to inquire into defendant's conduct.

We take up first the point upon which the lower court rejected the plaintiff's demand i. e., the question of whether her husband's fault contributed to his death". Nothing separated the deceased from the crossing except a picket fence extending a distance of 40 or 50 feet; but it was shown that the top of the train could be seen practically all the way along. The court said: "He (deceased) had at least 40 or 50 feet clear view of the approach of the train, and could easily have stopped on an up grade had he once looked to the left for his own safety, as he was bound in law to do, we think deceased was unquestionably guilty of very gross negligence which bars his recovery, regardless of the fault of defendant. Bank of Napoleonville vs. Knobloch & Rainold, 144 La. 100, 80 South. 214; Young vs. Louisiana Western R. Co., 153 La. 129, 95 South. 511; Tucker vs. Illinois Central R. Co., 141 La. 1106, 76 South. 212.

The argument of plaintiff would require us to reverse the law and to decide that a negligent defendant is liable, however, negligent the plaintiff might have been. But no negligence has been fixed upon the defendant. The case would have been entirely different had defendant's car been concealed from view and had suddenly emerged from behind some obstruction which concealed them from view; but the cars in this case were in full view.

But even if defendant had been at fault, plaintiff cannot recover if by the exercise of ordinary care he could have avoided the accident.

In the case of Mc Carthy vs. Whitney Iron Works, 48 A. 978, 20 South. 171, the court said:

While it is the duty of the master to keep his premises in safe condition, a servant will be denied relief for injuries caused by their unsafe condition, if the servant could have avoided the injuries.

In Williams vs. Liberty Stores, 148 La. 450, 87 South. 233, the plaintiff stumbled over a box left in an aisle of defendant's store. The court said:

"It was negligence on the part of the defendant to leave the box in the aisle. She, plaintiff, should and could have seen the box if she had exercised reasonable care and caution, located as it was on the floor at the other end of the aisle, and no person was in the store but herself and the cashier. Defendant pleaded contributory negligence on the part of the plaintiff and the negligence on her part was proved by her own evidence, and thus, being at fault, it is well settled that she cannot recover damages". 1 Sedwick on Damages p. 165 S. 93.

The evidence does not satisfy us that the train could have been stopped sooner than it was. It stopped within thirty feet after the watchman saw the plaintiff. From the situation it was easier for the plaintiff to see the train.

It is therefore ordered that the judgment herein be reversed and set aside; and it is now ordered that there be judgment in favor of defendants rejecting plaintiff's demand at his costs in both courts.

Judge Westerfield, being of counsel, being recused.