PRITCHARD v. YAZOO & MISS. VALLEY R. R. CO.

(April 7, 1930. Opinion and Decree.)

Edward A. Parsons, of New Orleans, attorney for plaintiff, appellant.

Lemle, Moreno & Lemle, of New Orleans, and Chas. N. Burch, H. D. Minor, of Memphis, Tenn., and Hunter C. Leake, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. This is a suit for personal injuries and property damage suffered by the plaintiff as a result of an intersectional collision between plaintiff's automobile and a passenger train of defendant company at the crossing at Euphrosine street and South Claiborne avenue in the city of New Orleans on November 7, 1928, about 5:25 p. m. The charge of negligence against the defendant is that its flagman failed to give the plaintiff any signal, notice, or warning of the approach of the train. Defendant denied liability, and pleaded contributory negligence. The case was tried before a jury and resulted in a verdict for the defendant, and plaintiff has appealed.

The record shows that South Claiborne avenue is a wide street with a neutral ground in the center and paved roadways on each side, and runs from uptown to downtown. The roadway on the lake side is used by the traffic going uptown, and the roadway on the river side is used by traffic moving downtown. The right of way and tracks of the defendant are along Euphrosine street, which crosses South Claiborne avenue at a right angle, running from the direction of the river to the lake. The photographs introduced in evidence show four switch tracks and two main line tracks. The north or outbound

main line track is on the Canal street side, and the south or inbound main line track is on the uptown side.

Plaintiff was on his way home, driving his Oldsmobile sedan uptown on Claiborne avenue. When he reached the crossing in question, seeing the outbound passenger train, he stopped his automobile. There was a flagman stationed at the crossing with a red lantern in his hand, and signaled the traffic to stop. Plaintiff stopped his car on the right-hand or lake side of the street, and another car stopped to the left of his car near the neutral ground. Two or three automobiles came up from the rear and stopped behind the first two cars. As soon as the outbound train passed the crossing, plaintiff and the car to the left, which composed the first line of cars waiting at the crossing, went forward. They passed over the outbound track and plaintiff's car was struck by the locomotive of a passenger train that was coming into the city on the south or inbound main line track, that was running about six miles per hour. His car was dragged towards the river and the rear part of it bumped into the front part of the automobile at his left, damaging it. Plaintiff's automobile was dragged some one hundred feet and practically demolished when the train stopped. He was painfully and severely injured and was immediately taken to the Illinois Central Railroad Hospital for first aid treatment, and then to his residence, where he was confined to his bed and home under the care of a physician.

The case, in its final analysis, turns upon purely a question of fact, i. e., whether or not the flagman, who had flagged the outbound train, left his place in the roadway after flagging the outbound train, without flagging the inbound train, or whether he remained at the crossing in the proper place in order to warn traffic of the incoming train and the plaintiff overlooked his presence when he started across the tracks after the outbound train had passed.

Twelve witnesses testified to having seen the occurrence, five on behalf of plaintiff, including himself, and seven on behalf of defendant, including the flagman. All of the defendant's witnesses were its employees, excepting one. All of the witnesses agree that the flagman properly flagged the outbound train with a red lantern, but plaintiff's witnesses testified that they did not see the flagman at the crossing when the inbound train arrived. All of defendant's witnesses testified that the flagman flagged the inbound train in the same manner as he did the outbound train, and that he was present the whole time. It appears that both of the trains were local passenger trains, and approached the crossing at about the same time. Plaintiff testified as follows:

"A. Just before I got to the crossing I looked to my left and I saw a train coming out Euphrosine Street to cross Claiborne, so I immediately brought my machine to a standstill and cut off my engine. I always do that when I see a train coming, that is what I do, I stop. I stopped before the man flagged the crossing, and, in my opinion, the man was a little late in flagging, because I stopped before he stopped the rest of the traffic. * * *

"Q. But you were the first car to stop in the line of cars that did stop to permit the outgoing train to pass?

"A. Yes, sir. * * *

"Q. Why did you start to move off?

"A. Because there was no one to stop me and the road was clear.

"Q. What do you mean by 'the road was clear'?

"A. There was nothing to obstruct me and nobody giving me any warning. There should have been a man to stop me when the other train was going out, but he was

not there any more, and I naturally assumed when the train moved on it was all right for me to move on.

"Q. What train do you refer to when you say the train had gone on?

"A. The outgoing train.

"Q. After the outgoing train had gone on what did you do?

"A. Just as the end of it was coming I started my motor again, and when the end got by I started on. * * *

"Q. What happened the moment after you started to go across?

"A. When I got on the incoming track things happened very quickly. There was a train right there, and it banged into me. I had only a second to make up my mind. It was pretty scarcely a second, and I tried to turn with it, and I believe the train banged my machine into the machine that was crossing with me. I am not very clear on that. I didn't see it do it, but I hung to my steering wheel, and when I wound up, of course, I was probably across the neutral ground, possibly fifty or sixty feet from where I started."

Evidently the presence of the flagman suggested to the plaintiff's mind that he was there only for the purpose of flagging the outbound train, and for no other purpose. Having heeded the flagman's signal in regard to the outbound train, plaintiff dismissed the flagman from his mind and paid no further attention to him. His own testimony shows that he gave no thought to the fact that a south or inbound train might be approaching the crossing, and that he did not even look in that direction.

Some of the plaintiff's witnesses were not in position to see the flagman, because of the presence of a number of automobiles at the scene of the accident. The evidence also establishes the fact that, after flagging the outbound train, the flagman stepped in between the south or inbound and the north or outbound tracks, so that he could not be seen until after the north or outbound train had passed. This may

account for the fact that a number of plaintiff's witnesses, who were sitting in the automobiles waiting for the train to pass, did not see him. Plaintiff was in an automobile which was in the front line and, consequently, in a position where he could have seen the flagman had he paid any attention to him.

The preponderance of the evidence is with the defendant that the flagman was present and properly flagged the inbound train. Plaintiff was solely at fault in not keeping a proper lookout. Smith vs. I. C. R. Co., 10 La. App. 342, 120 So. 405; Gibbens vs. N. O. Terminal Co., 1 La. App. 371, affirmed by Supreme Court, 159 La. 347, 105 So. 367.

For the reasons assigned, the judgment is affirmed.